UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DETROY LIVINGSTON,

                              Plaintiff,

v.

JAMES ESCROW,                                          Case # 08-CV-6576-FPG
G. HARVEY,
KEITH DUBRAY,                                          DECISION & ORDER
WILLIAM BILLS,
JOHN DOE,
GLENN GOORD,
RENEE GATES,
N.R. WHITTEN,

                              Defendants.

## I.    **INTRODUCTION**

*Pro se* Plaintiff Detroy Livingston, an inmate in the custody of the New York State
Department of Corrections and Community Supervision ("DOCCS"), commenced this action
pursuant to 42 U.S.C. § 1983 alleging that Defendants[1] James Escrow ("Escrow"), G. Harvey
("Harvey"), Keith Dubray ("Dubray"), William Bills ("Bills"), John Doe ("Doe"), Glenn Goord
("Goord"), Renee Gates ("Gates") and N.R. Whitten ("Whitten"), violated his civil rights by
denying him due process and access to the courts. Dkt. #82. The Amended Complaint was filed
against these Defendants in their individual capacity. *Id.*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Goord has moved
this Court for an order granting summary judgment in his favor on the grounds that the
Complaint fails to state a claim upon which relief can be granted, and he was not personally
involved in the alleged deprivation of access to the courts, the sole allegation against him. Dkt.

---

[1] Defendants New York State Department of Correctional Services, Janet Gauge, Brian Fischer,
Karol B. Magnum, Leonard Joblove and Charles J. Hynes have been previously dismissed from
this action. Dkt. ###3, 82, 128.

#143. Plaintiff filed his Notice of Opposition to Motion for Summary Judgment ("Pl.'s Opp'n"), including his Affidavit in Support of Opposition to Motion for Summary Judgment ("Pl.'s. Opp'n Aff.") and his Memorandum of Law ("Pl.'s Mem."). Dkt. #149. By letter request, Defendant's attorney asked the Court to consider the Declaration ("Benitez Decl.") filed on September 26, 2013 (Dkt. #147) as a reply and in support of Goord's summary judgment motion.

This case was assigned to this Court on January 15, 2013. Dkt. #123. Pursuant to this Court's Pre-trial Order of May 9, 2013, a jury trial of this matter has been scheduled to commence on October 21, 2013 at 8:30 A.M. Dkt. #133.

## II.   **BACKGROUND**

According to his Amended Complaint, Plaintiff was in the custody of the New York State Department of Correctional Services ("DOCS"), predecessor to the New York State Department of Corrections and Community Supervision ("DOCCS"), and incarcerated at the Elmira Correctional Facility ("Elmira") at the time the complained of acts occurred. Plaintiff alleges that in July 2006, he was transferred to Auburn Correctional Facility ("Auburn") to attend to a lost property action he was pursuing in the New York Court of Claims and, while he was away in Auburn, the Elmira mailroom staff held his mail. Upon Plaintiff's return to Elmira, on August 17, 2006, the mailroom staff delivered to him the accumulated mail which included a letter dated July 26, 2006 and addressed to Plaintiff from the New York State Court of Appeals ("Court of Appeals") regarding Plaintiff's application for a writ of *error coram nobis*. The Court of Appeals' letter informed Plaintiff that any additional submissions in the application for a certificate permitting a further appeal must be mailed within three weeks after the date of the letter, with a copy served on the adverse party. This letter also requested that "[p]articular written attention should be given to identifying reviewability and preservation issues (Rules of Practice, § 500.20[a])."

Pursuant to the Amended Complaint, by the conduct of the mailroom staff in holding the mail until August 17, 2006, Plaintiff missed the filing deadline set by the Court of Appeals, and his application was dismissed on the August 17, 2006, the same date on which mailroom staff delivered to him the letter from the Court of Appeals.   Plaintiff alleges in the Amended Complaint that the mailroom staff withheld his mail to intentionally deprive Plaintiff of his right to access the courts.

As to Goord, who is alleged to have been employed by DOCS as the Commissioner during the relevant period (Dkt. #82 ¶ 6), the Amended Complaint states that he wrongfully maintained policies, procedures and customs which deprived Plaintiff of his constitutional rights, violated his right of access to the courts, and resulted in the dismissal of his appeal to the Court of Appeals (Dkt. #82 ¶ 48).   On this motion for summary judgment, the Court is called upon to consider only the allegations against Goord.


## III.   DISCUSSION

### A.  Plaintiff's Opposition to the Timing of Defendant's Summary Judgment

Plaintiff asserts that Goord's motion for summary judgment must be dismissed as untimely under subdivision (b) of Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), which governs the time to file such motions, and provides that "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery."   According to Plaintiff, Goord filed his motion "beyond the allotted time limit."   Dkt. #149 at 4, ¶ 11.   The Preliminary Statement of the Memorandum of Law in Support of Commissioner Goord's Motion for Summary Judgment ("Def.'s Mem.") (Dkt. #143-2 at 1) states that Goord was not initially sued in this lawsuit (Dkt. #1), but was added as a Defendant in 2011 (Dkt. ##81, 82) and answered the Amended

Complaint on March 27, 2012 (Dkt. #103).  Thereafter, according to Def.'s Mem., and as borne out upon a review of district court records, the Court neither held a Rule 16 conference nor issued a scheduling order following Goord's addition as a Defendant.  Regarding the summary judgment motion, this Court, on September 12, 2013, issued a Motion Scheduling Order & Notice to Pro Se Plaintiff ("Scheduling Order"), setting specific dates for the filing of Plaintiff's responding papers and for a reply, if any, by Defendant. Dkt. #144.  By this Scheduling Order, the Court, in the interest of resolving any outstanding issues prior to a trial of this matter, and in accordance with Rule 56(b), effectively issued its order permitting Defendant's summary judgment motion to proceed on a different timetable.  Plaintiff's request to dismiss this motion as untimely, therefore, is denied.

### B. Summary Judgment Standard

Pursuant to Rule 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A fact is "material" if it might affect the outcome of the suit under governing law." *Id.*

Summary judgment is appropriate "[w]here the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Thus, the Court's function in deciding a summary judgment motion is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Liberty Lobby, Inc.*, 477 U.S. at 249. When a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250.

4

The Second Circuit offered guidance in the discernment of genuine issues of material fact, stating: "[i]n assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought." *Duse v. International Business Machines Corp.*, 252 F.3d 151, 158 (2d Cir. 2001) (citing *e.g.*, *Liberty Lobby, Inc.*, 477 U.S. at 255). Although the district court must view the evidence in favor of the nonmoving party, "'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Liberty Lobby, Inc.*, 477 U.S. at 252) (internal alterations and emphasis omitted).  Reliance by the nonmoving party on "conclusory allegations or unsubstantiated speculation" is insufficient to defeat a motion for summary judgment. *Id.* at 554 (quoting *Fujitsu Ltd. v. Federal Exp. Corp.*, 247 F.3d 423, 428 (2d Cir. 2001).

Where, as in the present circumstances, the party opposing summary judgment is *pro se*, the Court must "read the pleadings ... liberally and interpret them to raise the strongest arguments that they suggest." *Morrison v. Parmele*, 892 F. Supp. 2d 485, 487 (W.D.N.Y. 2012) (quoting *Corcoran v. New York Power Authority*, 202 F.3d 530, 536 (2d Cir. 1999)).  This liberalized approach to *pro se* pleadings notwithstanding, "proceeding *pro se* does not otherwise relieve [opposing party] from the usual requirements of summary judgment." *Fitzpatrick v. N.Y. Cornell Hosp.*, No. 00-Civ.-8594(LAP), 2002 U.S. Dist. LEXIS 25166, at *5 (S.D.N.Y. Jan. 9, 2003). *See also Stinson v. Sheriff's Dept. of Sullivan County*, 499 F. Supp. 259, 262 (S.D.N.Y. 1980) (holding that the "liberal construction" accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended").

Plaintiff has alleged that Defendants violated his civil rights under 42 U.S.C. § 1983 which imposes civil liability upon any person who, under color of state law, subjects an individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Wimmer v. Suffolk County Police Dept.*, 176 F.3d 125, 137 (2d Cir. 1999). Because § 1983, itself, is not "'a source of substantive rights,' but merely provides 'a method for vindication of federal rights elsewhere conferred,'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3, (1979)); *see Ramsey v. Goord*, 661 F. Supp. 2d 370, 384 (W.D.N.Y. 2009), it is imperative at the outset for a court to identify the specific constitutional right or rights alleged to have been violated. *Albright v. Oliver*, 510 U.S. at 271 ("The first step in any such claim is to identify the specific constitutional right allegedly infringed.") (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and *Baker v. McCollan*, 443 U.S. at 140).

The Amended Complaint in this case alleges violations by all Defendants, including Goord, of Plaintiff's civil rights under the First, Sixth, Eighth and the Fourteenth Amendments to the United States Constitution. Respecting Goord, the Amended Complaint specifically alleges that he (1) "upon information and belief...was employed by DOCS as the commissioner at the time the acts about which Plaintiff now complains occurred" (Dkt. #82 ¶6); and (2) "maintained, at all relevant times herein, policies, procedures and customs, which deprived Plaintiff of his constitutional rights, his right of access to the court was violated, and his appeal to the Court of Appeals was dismissed" (*Id.* ¶ 48). Goord seeks summary judgment dismissing the action against him on the grounds that the Amended Complaint fails to state a claim upon which relief can be granted, and points to the lack of personal involvement on his part in the allegations of mail-withholding conduct.

**C. Denial of Access to the Courts**

There is no disagreement that "[i]nterference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). Courts have held that in order to state a § 1983 claim for denial of access to the courts, e.g., in a case involving interference with legal mail, a plaintiff must allege that the defendant "took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.'" *Id.* (citing *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)); *see also Cancel v. Goord*, 2001 WL 303713, at *4 (S.D.N.Y. 2001) ("[I]n order to survive a motion to dismiss, a plaintiff must allege not only that the defendant's alleged conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim.") (citing *Lewis*, 518 U.S. at 353). Put another way, "the plaintiff must show that a 'non-frivolous legal claim had been frustrated or was being impeded' due to the actions of prison officials." *Cancel v. Goord*, 2001 WL 303713, at *4 (citing *Warburton v. Underwood*, 2 F. Supp. 2d 306, 312 (W.D.N.Y. 1998) (quoting *Lewis*, 518 U.S. at 353); *see also Monsky v. Moraghan*, 127 F.3d at 247.

Construing the Amended Complaint and the other documents reviewable on a motion for summary judgment liberally, Plaintiff's allegations against Goord woefully lack any showing of deliberate and malicious conduct which resulted in actual injury to Plaintiff by frustrating or impeding his pursuit of a non-frivolous legal claim. Plaintiff, in conclusory fashion, simply states that as a result of policies, procedures and customs maintained by Goord, he was deprived of his constitutional rights, his right of access to the court was violated, and his appeal to the

Court of Appeals was dismissed. These allegations fall far short of demonstrating any deliberate and malicious conduct on Goord's part.

Initially, Plaintiff's Amended Complaint focused on unnamed and unspecified policies, procedures and customs allegedly maintained by Goord as the sources of the alleged civil rights violations, but Plaintiff has now specified DOCS Directive #4015 as the offending policy. Pl.'s. Opp'n Aff. ¶ 7; *See* Dkt. #147 at 42, Ex. F). Most particularly, Plaintiff alleges that the Directive's policy and procedure mandating that the legal mail of an inmate on out-to-court status be held until his return to the facility,[2] unconstitutionally denied him access to the courts and, because of prior lawsuits involving other inmate complaints regarding withholding and delaying mail delivery, Goord was actually or inferentially aware that his constitutional right to access the courts was being violated thereby. He cites two cases, in particular, as examples of such lawsuits giving notice of constitutional violations: *Davis v. Goord*, 320 F.3d 346 (2d Cir. 2003) (holding that although allegations in *pro se* inmate's civil rights complaint that prison officials on two occasions opened his legal mail outside of his presence were insufficient to state a claim for denial of access to the court or a violation of free speech, district court should have granted him leave to amend the complaint to attempt to allege an actual injury) and *Davidson v. Scully*, 694 F.2d 50 (2d Cir. 1982) (reversing a district court's dismissal of inmate's complaint protesting prison regulations permitting the opening of all outgoing mail on the ground that as applied to the correspondence in question, such prison regulations were irrational). Neither of the cases upon which Plaintiff relies raised or addressed any constitutional violation of an inmate's civil rights resulting from DOCS Directive #4015. Having documented Plaintiff's return to Elmira on August 2, 2006 from out-to-court status (Dkt. #147, Ex. G) and provided

---

[2] The pertinent provision of DOCS Directive #4015 states in Section (IV)(B)(3)(a): "'Out-to-Court'": "The Correspondence Unit, upon notification via the facility 'Change Sheet' placing an inmate on out-to-court status, shall hold all mail received for that inmate until such time as: the inmate returns from court."

copies of Legal/Privileged Mail Acknowledgment of Receipt Logs for the period July 26, 2006 to August 31, 2006 (Dkt. 147, Ex. H), which clearly show that Plaintiff signed for legal mail on August 11, 2006, August 15, 2006, August 17, 2006, August 25, 2006, August 28, 2006, August 30, 2006 and August 31, 2006, Defendant has sufficiently demonstrated that the out-of-court policy set forth in DOCS Directive #4015 is not implicated in the instant circumstances.

Nowhere in the Amended Complaint, or in any of the pleadings, papers opposing this motion, interrogatories, affidavits or other pertinent submissions, is there any attempt by Plaintiff to show, or even address, the merits of the application for leave to appeal the Appellate Division, Second Department's denial of the writ of *error coram nobis* or, likewise, the merits of any supplemental information or documentation that he would have submitted, but for the alleged delayed delivery of the mail. Indeed, Plaintiff has never specifically referred to, or identified the exact nature or content of any additional information, merit-based or otherwise, which he would have submitted to the Court of Appeals in support of his leave application.

In denying Plaintiff's application for leave to appeal the Appellate Division, Second Department's denial of Plaintiff's application for a writ of *error coram nobis*, the Court of Appeals articulated its reason therefor: "upon the record and the proceedings herein, there is no question of law presented which ought to be reviewed." By no interpretation of the allegations in the Amended Complaint is it reasonable to conclude that the Court of Appeals' discretionary decision to deny Plaintiff's appeal derived from Plaintiff's failure to submit additional supportive materials within the required timeframe outlined in the letter, rather than the absence of a cognizable question of law. Even assuming Goord maintained the complained of policies, procedures and customs which Plaintiff claims interfered with the delivery of his mail, Plaintiff has failed to establish that he suffered an actual injury, i.e., that Goord frustrated or impeded

Plaintiff's pursuit of a "non-frivolous legal claim." Plaintiff has failed to state a claim against Goord for denial of access to the courts.

## D. Personal Involvement

Defendant Goord contends that he cannot be found to be personally liable in this case and is entitled to summary judgment because he was not personally involved in any constitutional violation. Personal involvement is a prerequisite for the assessment of damages in a § 1983 action against a supervisory official in his individual capacity. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010); *Farrell v. Burke*, 449 F.3d 496, 501 (2d Cir. 1994). Personal involvement of a supervisory defendant may be demonstrated by evidence that the defendant: (1) directly participated in the alleged violation; (2) failed to remedy the wrong after being informed of the violation through a report or an appeal; (3) created a policy or custom under which unconstitutional practices occurred or were permitted to continue; (4) was grossly negligent in supervising the subordinates who committed wrongful acts; or (5) exhibited deliberate indifference to inmates' rights by failing to act on information indicating that unconstitutional acts were occurring.[3] *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *see Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986). Under the *Colon* analysis, "The mere fact of supervisory

---

[3]The Court is aware that at least one New York district court has held that the Supreme Court, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), eliminated most of the *Colon* factors (citing *Bellamy v. Mount Vernon Hosp.*, 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009) ("Only the first and part of the third *Colon* Categories pass *Iqbal's* muster...The other *Colon* categories impose the exact types of supervisory liability that *Iqbal* eliminated.") *Grullon v. City of New Haven*, 720 F.3d 133 (2d Cir. 2013), decided by the Second Circuit on June 19, 2013, cited all five factors set out in *Colon v. Coughlin* and, further, referenced the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), indicating that *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain violations." The Second Circuit was not presented with proper facts in *Grullon* to rule on *Iqbal's* significance and has not explicitly recognized the split among the district courts over whether all five of the *Colon* factors are still applicable. *See Liner v. Fischer*, 2013 WL 3168660, at *7+(S.D.N.Y. June 24, 2013) (summarizing the state of the law in this Circuit regarding how many of the *Colon* factors survive in the wake of *Iqbal*, and agreeing with the "majority view" that where the constitutional claim does not require a showing of discriminatory intent, the personal-involvement analysis in *Colon* should still apply); *see also, Wik v. Kunego*, 2012 WL 4801038, at *3, n.3 (W.D.N.Y. 2012); *Stresing v. Agostinoni*, 2012 WL 2405240, at *4 (W.D.N.Y. 2012).

authority, however, is insufficient to demonstrate liability, based on a failure to supervise, under § 1983." *Id.* at 874; *Ramsey v. Goord*, 661 F. Supp. 2d at 385.

Even viewing his allegations favorably under an analysis of the *Colon* criteria, Plaintiff has failed to establish evidence on which the jury could reasonably find for him on the issue of Goord's personal involvement in the alleged deprivation of his rights. In this regard, nothing in the record demonstrates that Goord directly participated in the denial of Plaintiff's right of access to the courts, nor is there any evidence in the record from which to conclude the existence of any of the remaining *Colon* categories. To this point, Plaintiff's First Set of Interrogatories propounded to Goord addressed other issues, such as the relationship and communications between Elmira staff and the Kings County District Attorney's Office, but did not seek to solicit information relative to the Amended Complaint's allegations against Goord. Dkt. #116.

Finally, Defendant points to the responses of Mailroom Supervisor William Bills, also a Defendant in this action, to Plaintiff's First Set of Interrogatories to Defendants ("Bills Response"), declared on January 14, 2010 and filed on January 15, 2010 (Dkt. #34), as further evidence of the lack of Goord's personal involvement and, importantly, as also demonstrating the absence of delay in mail delivery to Plaintiff, despite the presence of the private "Pitney Bowes" postage stamp of July 26, 2006 on the envelope containing the Court of Appeals' letter. Specifically, Defendant enumerated the following interrogatories and the respective responses:

> 6. Why wasn't the July 26, 2006 legal mail from the NYS Court of Appeals delivered to Plaintiff on August 11, 2006 or August 15, 2006 when other legal mail that were being held for his return from the court trip was delivered to him before August 17, 2006 date?
>
> **RESPONSE:** The mail in question was received in the Elmira correspondence office on August 17, 2006 and delivered on the same date.
>
> 23. The July 26, 2006 legal mail from the NYS Court of Appeals was postmarked on the same date, but was stamped by Elmira C.F. correspondence office on August 17, 2006 the date that it was

delivered to Plaintiff, 23 days after the letter was mailed. What does this timeline say to you?

**RESPONSE:** The mail in question was received at Elmira on August17, 2006.  I will not speculate why.

Plaintiff's conclusory and speculative allegations regarding Goord's personal involvement in the alleged denial of his right to access the courts do not create an issue of material fact for trial such that a reasonable and rational trier of fact could find in his favor. Summary judgment in favor of Goord is warranted.

## IV.  CONCLUSION

Defendant's motion for partial summary judgment dismissing the claims set forth in the Amended Complaint against Goord is granted.  The Clerk of the Court is hereby ordered to remove Goord as a Defendant in this action.  Furthermore, the jury trial scheduled on October 21, 2013 at 8:30 A.M. shall proceed against Defendants Escrow, Harvey, DuBray, Bills, Doe, Gates and Whitten on the claims set forth against them in the Amended Complaint.

IT IS SO ORDERED.

DATED:      October 11, 2013
            Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge