1                 UNITED STATES DISTRICT COURT

2                 WESTERN DISTRICT OF NEW YORK

3

4

5    - - - - - - - - - - - - - X
     DETROY LIVINGSTON,                        08-CV-6576(G)
6               Plaintiff
     vs.
7                                      Rochester, New York
     JAMES ESGROW, ET AL.,             October 23, 2013
8               Defendant.             8:30 a.m.
     - - - - - - - - - - - - - X
9

10

11                   TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE FRANK P. GERACI, JR.
12                 UNITED STATES DISTRICT JUDGE

13

14               DETROY LIVINGSTON, PRO SE

15

16               NYS ATTORNEY GENERAL OFFICE
                 BY: J. RICHARD BENITEZ, ESQ.
17               Assistant Attorney General
                 144 Exchange Boulevard
18               Rochester, New York 14614
                 Appearing on behalf of the Defendants

19

20

21

22

23   COURT REPORTER:    Christi A. Macri, FAPR, RMR, CRR, CRI
                        Kenneth B. Keating Federal Building
                        100 State Street, Room 4240
24                      Rochester, New York 14614

25

1                          <u>I N D E X</u>

2

3   William Bills
          Direct examination by Mr. Livingston          Page  94
4

5   Nancy Whitten
          Direct examination by Mr. Livingston          Page 126
6

7   Detroy Livingston
          Direct examination by Mr. Livingston          Page 138
8         Cross-examination by Mr. Benitez              Page 156
          Redirect examination by Mr. Livingston        Page 159
9

10

11  Charge conference                                   Page 181

12  Summation by Mr. Benitez                            Page 188

13  Summation by Mr. Livingston                         Page 200

14

15

16

17

18  <u>EXHIBIT          RECEIVED</u>
    Plaintiff   6     97
19  Plaintiff  9B    103
    Plaintiff   8    108
20  Plaintiff  9C    128
    Plaintiff   2    144
21  Plaintiff   1    145
    Plaintiff  20    146
22  Plaintiff   5    147
    Plaintiff  21    151
23  Plaintiff  22    152
    Defendant 408    164

24

25

                    **P R O C E E D I N G S**

                         *          *          *

1          (**WHEREUPON**, the jury is not present).

2          **THE COURT:** Good morning.

3          **MR. BENITEZ:**  Good morning, Judge.

4          **THE COURT:** Ready to proceed?

5          **MR. LIVINGSTON:**  Yes.

6          **THE COURT:**  Bring the jury out.

7          **MR. LIVINGSTON:**  May I?

8          **THE COURT:**  Sure.

9          **MR. LIVINGSTON:**  I was wondering if I could get a

10 read back from the last thing what he said and done.

11         **THE COURT:** Last testimony of Mr. Bills?

12         **MR. LIVINGSTON:**  Yes.

13         **THE COURT:** He was reviewing Exhibit No. 4.

14 Indicated it was received August 17.  And you showed him the

15 envelope that had the date of July 26, '08, indicated it was

16 run through Pitney Bowes machine.  And he did not know when it

17 was sent.

18         **MR. LIVINGSTON:**  Okay.

19         **THE COURT:** Okay.

20         **MR. LIVINGSTON:**  Thanks.

21         **THE COURT:** You're welcome.  Bring the jury out.

22         (**WHEREUPON**, the jury is present).

23         **THE COURT:** Good morning, ladies and gentlemen.  You

1   may be seated.  You can just come in and sit down when --

2   everyone is standing for you actually.

3           Mr. Bills, you can retake the stand, I remind you

4   you're still under oath.

08:49:17AM 5         (**WHEREUPON**, William Bills resumed the stand).

6           **THE COURT:**  Mr. Livingston, you may continue your

7   examination.

8   **BY MR. LIVINGSTON:**

9   Q.   Good morning.

08:49:36AM 10   A.   Good morning.

11  Q.   So I think your last -- we was talking about this the last

12  time --

13          **THE COURT:**  Exhibit No. 4.

14  **BY MR. LIVINGSTON:**

08:50:18AM 15   Q.   Yes, my Exhibit No. 4.  If you --

16  A.   I recall that.

17  Q.   You're saying that the date on that stamp right there, you

18  can't say if that's the date it was mailed.  That's what you

19  was saying?

08:50:36AM 20   A.   That's what I'm saying, yes.

21  Q.   Why would you say that?

22  A.   There's nothing on there that indicates when that piece of

23  mail went through the U.S. Postal Service.  The only thing on

24  that document or only thing on that envelope is the Pitney

08:51:05AM 25  Bowes stamp that was applied at the Albany -- wherever this

1   is, appeals court office in Albany, New York.  That was

2   apparently done in the mail room or correspondence office at

3   the courthouse.  It was not done at the U.S. Postal Service,

4   that's why I think it says U.S. postage.  And then it says

08:51:24AM 5   Pitney Bowes, it doesn't say U.S. Postal Service.  Normally a

6   piece of mail that goes through the U.S. Postal Service would

7   have a USPS stamp.

8   Q.   Okay.  So if that information was incorrect or different

9   from when the post office received it, don't you think they

08:51:46AM 10  would put something else on it?

11  A.   I have no knowledge that that is a practice of the U.S.

12  Postal Service.  I don't know that.

13  Q.   Okay. I would like to show you something else.

14            **MR. LIVINGSTON:**  6.  Getting the hang of it.

08:52:31AM 15           **THE CLERK:** Plaintiff's Exhibit No. 6.

16            **MR. LIVINGSTON:**  Yes, thanks.

17            **MR. BENITEZ:** Judge, I would object on three bases.

18  One, that this would be a hearsay document.

19            Number two, that there's no authentication under

08:53:45AM 20  the rules.  It's not self-authenticating.

21            And as to its relevance to this particular claim

22  that the -- that that particular envelope, which is

23  Plaintiff's Exhibit 4 was withheld, that's the claim, this is

24  not related to that particular claim.

08:54:06AM 25           So I object on three bases on this document that's

1  been marked as Exhibit Plaintiff 6.

2       **THE COURT:** Can you pass it up to the clerk?

3       Can you explain the relevance, Mr. Livingston?

4       **MR. LIVINGSTON:**  Thanks.

08:54:55AM 5       It's from the same court as the envelope that's in

6  dispute and they used the same mailing process, the Bowes, but

7  in this one because it was delivered to the post office on

8  another date from what the Bowes says, the post office put its

9  own stamp and said the date that it received it.  So they

08:55:31AM 10  corrected what that date that Bowes says, and I'm trying to

11  show -- because he's saying that that's not necessarily the

12  date it was delivered what the Bowes says, the Pitney Bowes

13  stamp says on this envelope.

14       **THE COURT:**  Okay, all right.  I'm going to overrule

08:55:52AM 15  the objection.

16       **MR. LIVINGSTON:** Show him?

17       **THE COURT:** Yes, you can show the witness, see if he

18  can identify it.

19       **THE WITNESS:** I would contest the statement if I

08:56:17AM 20  could?  This is not --

21       **THE COURT:** No, you don't get to contest the

22  statement.

23  **BY MR. LIVINGSTON:**

24  Q.   You see that?

08:56:23AM 25  A.   Yes.

1    Q.    It got a Bowes stamp.  You see the date on what the Bowes

2    stamp says?

3    A.    Yes, it says August 24th.

4    Q.    And it's another stamp there in black?

08:56:51AM 5    A.    Correct.

6    Q.    What that say?

7    A.    It says August 25th.

8    Q.    That's the day prior from the Bowes?

9    A.    It's the day after the Bowes.

08:57:01AM 10    **THE COURT:** Those are both '06?

11    **THE WITNESS:** Correct.  And this is from New York,

12    not from Albany, this is from New York City.

13    **MR. LIVINGSTON:**  Okay, I'll ask the questions.

14    **THE COURT:**  Are you moving the admission?

08:57:17AM 15    **MR. LIVINGSTON:**  Yes, I would like to.

16    **THE COURT:** You continue to object?

17    **MR. BENITEZ:**  Thank you, Judge.

18    **THE COURT:** 6 will be received.

19    (**WHEREUPON**, Plaintiff Exhibit 6 was received into

08:57:34AM 20    evidence).

21    **BY MR. LIVINGSTON:**

22    Q.    You're saying because this was mailed from New York that

23    the mailing process will be different?

24    A.    I don't know that for sure.  But I just know that this one

08:57:46AM 25    is from New York, New York.  The other piece of mail was from

1    Albany, New York.  I don't know if there's a variance in how

2    they handled their mail.  I have no real knowledge of that.

3    It's just -- I'm making the point that it's not the same --

4    it's not the same mailing origin point.

08:58:03AM 5    Q.    So this wouldn't change your opinion of that if this

6    wasn't mailed on the date that the Bowes stamp says, that the

7    post office would correct it and put they own stamp of the day

8    they --

9    A.    No, it doesn't.

08:58:21AM 10    Q.    -- receive it?

11           So you agreeing that the post office did deliver

12    this envelope?

13           **THE COURT:**  You're referring to 4 now just for the

14    record?

08:58:43AM 15           **MR. LIVINGSTON:**  Yes.

16    **BY MR. LIVINGSTON:**

17    Q.    And Exhibit 4, you agreeing that the post office did

18    deliver that letter?

19    A.    I don't understand your question.

08:59:01AM 20    Q.    All right.  You saying Bowes put that -- it was a Bowes

21    stamp on there, right?

22    A.    That's correct.

23    Q.    So Bowes don't deliver the mail, do it?

24    A.    That's correct.

08:59:08AM 25    Q.    U.S. Postal Service deliver?

1 A.   That's correct.

2 Q.   So that's who delivered that letter?

3 A.   That would be correct.

4 Q.   So you say they wouldn't deliver it on time because it was

08:59:28AM 5 a Bowes stamp on it?

6 A.   I'm not saying that at all.

7 Q.   So what you saying?

8 A.   I'm saying there's no way to tell.  The only -- the only

9 identifying documentation on that whole piece of mail about

08:59:42AM 10 when Elmira, which is when Elmira's responsibility would

11 start, that when that arrived at Elmira is the received stamp

12 that says August 17.

13          I have no knowledge of what could have happened as

14 far as after that Pitney Bowes stamp was put on there, whether

09:00:00AM 15 it stayed at the courthouse, got put on a shelf or a table in

16 the courthouse and got delayed and then they put it in the

17 mail and it came to us, or any point in between the courthouse

18 and Elmira it could have been delayed.

19 Q.   All right.

09:00:15AM 20 A.   And there would be no demarcation on there to indicate

21 that that I know of.

22 Q.   All right.  So it couldn't be Elmira's fault that it was

23 stamped 22 days later?

24 A.   All I can tell you is our procedure is, as Ms. Gates

09:00:31AM 25 testified to, that as the mail comes in in huge bags, they

1 separate the mail into legal mail, facility mail, and inmate

2 personal mail.  Legal mail is then stamped as received and

3 then somebody takes the pile of legal mail and they cell

4 locate the mail, write the cell location on the envelope and

09:00:55AM 5 then it's divided into housing units.  There are ten housing

6 units at Elmira and eight -- eight blocks or eight galleries

7 in each housing unit.

8 Q.   Okay, okay, okay.  So all right.  The cell -- the cell

9 location, that's the I-2-6 that's on that envelope?

09:01:12AM 10 A.   That's correct.

11 Q.   Right.  So would you say that person that cell located

12 that letter is the same person that wrote OTC on it?

13 A.   I can't say that at all.  It's not the practice of the

14 mail room staff to write OTC on an envelope.

09:01:31AM 15 Q.   No?

16 A.   Because the only thing they would do is in this particular

17 case it's evident by the -- by the demarcation that our

18 correspondence --

19          **THE COURT:** Finish your answer.

09:01:47AM 20          **THE WITNESS:** -- it's evident that the

21 correspondence staff entered I-2-6 on there.  How the OTC got

22 on there I would have no idea.

23 **BY MR. LIVINGSTON:**

24 Q.   Okay.  So why is it evident that the correspondence staff

09:02:02AM 25 entered the I-2-6 on there and not evident that they put the

1 OTC on there?

2 A.   I can't tell through the scribble out, I don't know

3 everybody's handwriting specifically.

4 Q.   All right.

09:02:16AM 5 A.   I do recognize the I-2-6.  Again, I supervised the mail

6 room at Elmira for about six years.

7 Q.   Okay.

8 A.   I do recognize the handwriting.

9 Q.   Oh, so who handwriting is that then?

09:02:29AM 10 A.   I don't know whose it is, but I recognize it as a piece of

11 handwriting that was common on inmate mail.

12 Q.   Oh, so you saying the staff wouldn't put OTC on there? You

13 know what that mean, OTC?

14          **MR. BENITEZ:**  Objection, Your Honor, it's been

09:02:50AM 15 asked and answered over and over.

16          **THE COURT:** Not by this witness, I don't think.

17 Overruled, go ahead.

18          **THE WITNESS:** Yes, I know it means -- it's

19 abbreviation for out to court.

09:02:58AM 20 **BY MR. LIVINGSTON:**

21 Q.   All right.  So that would mean I was out to court when

22 they put that on there, would it?

23          **MR. BENITEZ:**  Objection, it calls for speculation.

24          **THE COURT:** Sustained, form of the question.

09:03:11AM 25 **BY MR. LIVINGSTON:**

1  Q.   Why would somebody put that on a envelope?

2  A.   I have no idea.

3  Q.   But you just said it mean out to court so --

4  A.   Correct.

09:03:20AM 5  Q.   -- wouldn't that tell you something?

6            **MR. BENITEZ:**  Objection, Your Honor, just asked and

7  answered.

8            **THE COURT:** Overruled.

9            **THE WITNESS:** I have no idea.  Anybody could have

09:03:27AM 10  put OTC on there.  You could have written OTC on there.

11  **BY MR. LIVINGSTON:**

12  Q.   Wow.  Yeah, you -- you said that -- I like to speak about

13  Exhibit B, 9B.  Show him?

14            **THE COURT:** Is it marked?

09:03:49AM 15            **MR. LIVINGSTON:**  Yes, 9B.

16            **THE COURT:** Okay.

17            **MR. LIVINGSTON:**  It's in evidence?

18            **THE COURT:** I don't think it's in evidence.  It's

19  not in evidence yet.  You can show it to him and ask him if he

09:04:05AM 20  recognizes it.

21            **MR. LIVINGSTON:**  Yes.

22            **THE WITNESS:** Yes, I recognize it.

23  **BY MR. LIVINGSTON:**

24  Q.   What else you recognize about it?  You wrote it?

09:04:20AM 25  A.   Yes, it's my handwriting.

1  Q.    Thank you.

2          **MR. LIVINGSTON:**  Is this in evidence?  Can I put

3  this in evidence?

4          **THE CLERK:** It's been marked, but not entered.

09:04:34AM 5          **THE COURT:** Ask Mr. Benitez, any objection?

6          **MR. BENITEZ:**  Take a quick look.  No objection,

7  Your Honor.

8          **THE COURT:** Plaintiff's Exhibit 9B will be received.

9  You need to give it to the clerk to let her mark it.

09:04:50AM 10          **THE CLERK:** I need Exhibit 6 as well.

11          (**WHEREUPON**, Plaintiff Exhibit 9B was received into

12  evidence).

13  **BY MR. LIVINGSTON:**

14  Q.    You wrote that because the grievance I wrote?

09:05:18AM 15  A.    Yes.

16  Q.    Just like the statement you made a while ago, you said you

17  don't know if I was the one that wrote the OTC on this.  You

18  also try blame me for --

19          **MR. BENITEZ:**  Objection, argumentative.

09:05:42AM 20          **THE COURT:** Let him finish his question.  Go ahead,

21  finish your question.

22  **BY MR. LIVINGSTON:**

23  Q.    -- for not notifying the people in correspondence office

24  that I was back?

09:06:02AM 25          **THE COURT:**  Objection is overruled.  Go ahead, you

1  can answer that.

2        **THE WITNESS:** Okay.  I'm not necessarily blaming you

3  for that.  What I'm -- again, the grievance process in the

4  Department of Corrections is supposed to be a non-adversarial

09:06:15AM 5  process, meaning that if a problem is identified by an inmate,

6  we as staff are to look at the circumstances.

7        Now, much like what we're going through here in

8  this court proceeding, a grievance process is something that's

9  already happened.  So what we're faced with is, we're faced

09:06:33AM 10  with investigating a situation that -- with the available

11  documentation.

12        As I stated --

13  Q.    Not to interrupt you --

14  A.    Okay.

09:06:48AM 15  Q.    -- don't the grievance directive says -- you familiar with

16  the grievance directive?

17  A.    Yes.

18  Q.    Not the grievance directive, excuse me.  The directive

19  4015, are you familiar with that?

09:07:07AM 20  A.    I believe -- I can't tell you -- if you can tell me what

21  the title of 4015 is?

22  Q.    I think it's forwarding mail?

23  A.    Yes, yes, we reviewed that yesterday.

24  Q.    Don't it -- if you recall, it's the responsibility of

09:07:29AM 25  correspondence mail room workers to check and see when

1 prisoner return to cell from court?

2 A.   I don't recall that item specifically.  My -- my

3 understanding of directive 4015 and the whole process of

4 forwarding inmate mail is for when an inmate is long-term or

09:07:52AM 5 permanently removed from the facility.  Then there's a -- in

6 other words, if an inmate is out to court for six months,

7 which happens occasionally, there would be mail there that may

8 have some importance.

9 Q.   I'm listening.

09:08:09AM 10 A.   Okay, and it can be forwarded to the -- wherever the

11 location of the inmate is.

12 Q.   I'd like to show you a copy of 4015.  Oh, I think it's

13 already --

14          **THE COURT:** It's received.

09:08:29AM 15          **MR. LIVINGSTON:**   -- received.

16          **THE COURT:** Exhibit 18; is that right?

17          **MR. LIVINGSTON:**   Excuse me?

18          **THE COURT:** Exhibit 18?

19          **MR. LIVINGSTON:**   Correct.

09:08:49AM 20 **BY MR. LIVINGSTON:**

21 Q.   Can you read what that says on paragraph 3?  Out to court

22 is its title.

23 A.   The correspondence unit, upon notification via facility

24 change sheet, placing an inmate in out to court status shall

09:09:24AM 25 hold all mail received for that inmate until such time, as in

1 this case number 3, the inmate returns from court.

2 Q.   So it's not my fault to notify the --

3 A.   Right, nobody in the grievance process said that it was

4 your fault.  That's why you've used the term --

09:09:41AM 5 Q.   Yes, you did -- excuse me -- excuse me?

6 A.   -- you used the term "blame."

7          **MR. BENITEZ:**  Objection, Your Honor, argumentative.

8          **THE COURT:** Sustained.  Don't argue with the

9 witness, let him answer the question.

09:09:49AM 10          **THE WITNESS:** You used the word "blame" and I'm not

11 blaming anybody.  I said the grievance process is

12 non-adversarial.  I looked at documents and, again, as I

13 indicated yesterday, I recall the grievance was not specific

14 to any one piece of mail.

09:10:04AM 15          It was a general grievance about the fact that you

16 had some pieces of mail that were returned to you on the 17th

17 that had been held, you know, past the -- your return date.

18          And during the grievance process we actually

19 acknowledged the fact that we had pieces of mail that did not

09:10:24AM 20 get returned to you in a timely fashion.  But it is not the

21 piece of mail that has anything to do with your appeal process

22 that was from the Syracuse court and a couple others.  It was

23 not the piece of mail from the Albany Court of Appeals.

24 **BY MR. LIVINGSTON:**

09:10:41AM 25 Q.   All right.

```
 1  A.    So through the grievance process -- through the grievance
 2  process we actually -- your complaint actually identified a
 3  problem that we, you know, admitted culpability to on the
 4  other pieces of mail.
```
09:10:56AM
```
 5  Q.    All right.  Thank you for that.  You see the last
 6  sentence?  I think it start with periodic checks?
 7  A.    Yes.
 8  Q.    All right.  Can you read that from there?
 9  A.    Period checks of inmates whose mail is being held are made
```
09:11:25AM
```
10  and inmates can help in these instances by writing to
11  correspondence to let them know that they are back at Elmira.
12  And, again, it's stated that way because I'm asking for help
13  sometimes.
14  Q.    Okay. Okay.  All right.  So you right there, you saying
```
09:11:40AM
```
15  it's the inmate's responsibility?
16              MR. BENITEZ:  Objection, asked and answered.
17              THE COURT: Yeah, sustained.  I don't think that's
18  fair.
19              MR. BENITEZ:  It's a waste of time now.
```
09:11:47AM
```
20              THE COURT: It's not a waste of time, Mr. Benitez.
21  He has a right to ask questions.
22              MR. BENITEZ:  Pursuant to Rule 403, Judge.
23              THE COURT: No, I don't think it's a waste of time
24  at all.
```
09:11:54AM
```
25              MR. BENITEZ:  Thank you.
```

1   BY MR. LIVINGSTON:

2   Q.   So it's a fact that directive 4015, paragraph 3,

3   subdivision A, is the correspondence responsibility to know

4   when a inmate return back from court, correct?

09:12:44AM 5   A.   Correct.

6   Q.   Excuse me.

7           MR. LIVINGSTON:   Exhibit 8.

8           THE CLERK: Plaintiff's Exhibit No. 8 has been

9   marked.

09:13:48AM 10          MR. LIVINGSTON:   Thanks.

11  BY MR. LIVINGSTON:

12  Q.   Do you recognize that?

13  A.   Yes, I do.

14  Q.   What is that?

09:14:35AM 15  A.   That is the inmate grievance complaint filed by you on

16  August 17th, 2006.

17  Q.   Thanks.  Can you read that?

18          THE COURT: Hang on, it's not received yet.

19          MR. LIVINGSTON:   Excuse me.

09:14:54AM 20          MR. BENITEZ:   No objection, Your Honor.

21          THE COURT: Plaintiff's Exhibit 8 will be received.

22          (WHEREUPON, Plaintiff Exhibit 8 was received into

23  evidence).

24          MR. LIVINGSTON:   Thanks.

09:15:05AM 25  BY MR. LIVINGSTON:

1  Q.    Can you read that?

2  A.    Yes, I can.

3  Q.    Can you read it, please?

4  A.    You mean the body where it talks about the description of

09:15:30AM 5  the problem?

6  Q.    The first paragraph.

7  A.    On the above date I signed for four legal mail.  Three of

8  them was being held for me while I was out to court.  I

9  returned to this prison on August 2nd, 2006.  It should not

09:15:46AM 10  have taken more than two weeks to get my legal mail to me.

11  Because of this lengthy delay to get my mail to me, I'm unable

12  to respond to legal issues that the time limit has expired on.

13  Q.    Yes.  That's the grievance that your investigation report

14  responded to?

09:16:12AM 15  A.    That's correct.

16  Q.    So it was specific about what I was complaining about, the

17  letters that was received?

18  A.    When I said "it wasn't specific," what I'm saying is it

19  was not specific to the piece of mail from the Albany Court of

09:16:31AM 20  Appeals that has to do with your time limit expiring.

21  Q.    But it says it right here, it says "because I'm unable to

22  respond to legal issue that the time limit has expired on"?

23  A.    But it did not identify the piece of mail in question.

24  Q.    It does, it says three pieces -- four pieces of mail

09:16:54AM 25  received, three of them was being held while I was out to

1  court?

2  A.   That's the only information I had to go on when the

3  grievance was filed by you.  So it doesn't tell me what date,

4  what court of origin, what legal entity it came from.  That's

09:17:10AM 5  what I mean by we didn't have any specifics.  So when we made

6  the response, the response is a general response.

7           There were pieces of mail that got put in the out

8  to court bin that were delivered late because either mail room

9  staff didn't check the bin or whatever happened after you came

09:17:31AM 10  back.

11          But it's not the piece of mail that has -- the

12  pieces of mail that were returned to you, none of those were

13  the piece that came in on the 17th of August, to my knowledge.

14  Q.   None of them was?

09:17:46AM 15  A.   There was only one piece of mail in question in this whole

16  thing that I'm aware of and it's the one from the Court of

17  Appeals that said you had a certain period of time.

18          And I certainly wouldn't have known that because we

19  wouldn't have had any idea what was in any of those envelopes

09:18:00AM 20  because we don't open legal mail.

21  Q.   Oh, so your investigation didn't find that out or didn't

22  try to find out like the specifics?

23  A.   Well, if I recall, Ms. Gates actually responded and

24  actually put a comment in her response something about the

09:18:19AM 25  fact that since she didn't have -- she no longer had any of

1    the envelopes because they were delivered to you.

2            She didn't have any way of looking at the envelopes

3    unless you brought them forward at the grievance process,

4    which is your right to do once you -- once the responses are

09:18:36AM 5    taken in and then the grievance hearing is held outside of our

6    presence, you have the right to bring in additional

7    documentation to support your claim.  And that would have

8    included the specific envelopes that were delivered late.

9    Q.    Do you remember what the grievance response was to this?

09:19:02AM 10   A.    Probably only because of viewing them in some preparation

11   for this hearing, but I wouldn't necessarily get a copy of

12   that response because it's -- once I've done my investigation,

13   it goes to the grievance committee.

14           They're a separate set of people, security, inmate

09:19:20AM 15   and program people on that committee and they review all the

16   facts and they give a determination.  That -- I don't have any

17   further knowledge of that once it leaves my office as an

18   investigation.

19   Q.    Because of my grievance, what took place in correspondence

09:19:47AM 20   because of the issues that I complained of?

21   A.    Well, as a result of the investigation, as I said before,

22   there were pieces of mail that were delayed upon your return

23   from court.  They were in the out to court bin.

24           As a result of my response and then forwarding up

09:20:10AM 25   to my supervisor, Ms. Whitten, the recommendation was that the

1  out to court legal bin be checked every day to try to prevent

2  anything like this from happening again.

3  Q.   That fix, that didn't fix my problem, did it?

4  A.   Well, I'm not sure in your case, again, I'll repeat it for

09:20:39AM 5  the umpteenth time, the pieces of mail which were held were

6  not the piece of mail that had anything to do with the

7  timeframe of your appeal.

8  Q.   All right.

9  A.   The only -- that piece of mail that withheld your appeal

09:20:54AM10  is the one that we've talked at length about with the Pitney

11  Bowes stamp on it, and then the only stamp that we have to

12  indicate when our office received it was the correspondence

13  stamp that indicated that we received it on the 17th of

14  August, 2006.

09:21:09AM15  Q.   Yeah, you keep coming back to that like your office didn't

16  delay my mail from being delivered to me.

17  A.   That particular piece of mail we didn't.

18  Q.   Just because it was stamped on August 17th, 2006?

19  A.   That was when our office received the piece of mail

09:21:30AM20  according to the stamp on the envelope.

21  Q.   But the stamp doesn't say that though?

22  A.   The received stamp says that, doesn't it?

23  Q.   No.

24  A.   What does it say?  I shouldn't be asking questions.

09:21:41AM25  Q.   You tell me what it says.  There it is right there.

1  A.   It says received August 17, 2006.  Correspondence.

2  Q.   Yeah, but it don't say your office -- correspondence

3  office received it.  It says "correspondence received,"

4  correspondence like it could have happened -- it could mean

09:22:01AM 5  that my name and number on the envelope received this

6  correspondence on that date.  It don't say the correspondence

7  received it -- correspondence office received it.

8              **MR. BENITEZ:**  Objection, form.

9              **THE COURT:** Yeah, sustained.

09:22:17AM 10 **BY MR. LIVINGSTON:**

11  Q.   All right, let me show example of what I'm speaking about.

12  You see that date on the grievance?

13              **THE COURT:** What is this?  What are you showing?

14              **THE WITNESS:** Yes.

09:22:33AM 15              **MR. LIVINGSTON:**  Exhibit 8.

16              **THE COURT:** Exhibit 8?

17              **MR. LIVINGSTON:**  Yes.

18              **THE COURT:** Thank you.

19  **BY MR. LIVINGSTON:**

09:22:37AM 20 Q.   You see that date right there?

21  A.   Yes, 8/17/06.

22  Q.   It says received, and read the rest.

23  A.   Received August 22nd, 2006, inmate grievance program

24  office.

09:22:50AM 25 Q.   All right.  See it's specific what happened here?

1  A.   Right.

2  Q.   This letter that you keep saying that you didn't

3  receive -- your office didn't receive, doesn't say --

4  specifically say that the correspondence office received it

09:23:06AM 5  like this one says the grievance program unit office received

6  it on that date.

7        But this stamp says is received August 17 -- excuse

8  me, correspondence.  So I received that correspondence on that

9  day?

09:23:21AM 10  A.   If my recollection serves me correct, Ms. Gates testified

11  that that is the stamp that is used in the -- or was at the

12  time she worked there, that is the stamp that is used in the

13  correspondence office at Elmira and is stamped on every piece

14  of mail that's received in the correspondence office.

09:23:39AM 15  Q.   Mm-hmm.  But -- all right.  When?  Like as soon as it come

16  through the door it's stamped?

17  A.   As soon as it's sorted.

18  Q.   Sorted.  So it could be sorted later?

19  A.   No, all mail is sorted every day when the bag comes in in

09:23:55AM 20  the morning.  Again, Ms. Gates testified every morning when

21  the mail comes in in the bags it's taken out, sorted into the

22  three or four different categories, and it's stamped as

23  received.  The legal mail specifically is separated and

24  stamped as received before it's even cell located, before it's

09:24:17AM 25  even separated into blocks, it's all stamped with a hand stamp

1 that has an adjustable date on it, each day you change it to

2 the current date and you stamp all the incoming mail.

3 Q.   So this letter couldn't be put to the side to be stamped

4 later?

09:24:38AM 5 A.   I'm not saying it couldn't be, but I don't know what

6 reason anybody in the mail room would have to set a piece of

7 mail aside to not stamp it.

8 Q.   Because I'm out to court like it says right there, that's

9 the reason right there.

09:24:50AM 10 A.   Again, we wouldn't even be looking at that, we wouldn't

11 have looked at whose piece of mail it was or where the cell

12 location was.

13 Q.   Hold up.  Why wouldn't you?  Because there's been

14 testimony that it's cell checked to see where the individual

09:25:08AM 15 that is delivered to, where -- and if they are out to court,

16 it's put in a holder or a file, out to court file or

17 something?

18 A.   The received stamp is put on every piece of mail before an

19 inmate's name or cell location is even considered on it.

09:25:28AM 20 There's a huge pile of mail there and the first step in the

21 whole thing is to stamp it received.  Then it's taken over to

22 a desk where there's a computer and they punch in the

23 department ID number, and they cell locate it and enter the

24 cell location on the piece of mail.

09:25:49AM 25 Q.   Looking at Exhibit 10, so on the July 26th, 2006 --

1          **THE COURT:** Would you turn it sideways so it can be

2    read?  Thank you.

3    **BY MR. LIVINGSTON:**

4    Q.   On this date right here that same thing happened to that

09:26:07AM 5    letter right there?

6    A.   Yes, my recollection is that your -- you actually went out

7    to court on 7/26; is that correct?  Did you -- were you out to

8    court?  Did you go out?

9          **THE COURT:** You can't ask questions.

09:26:18AM 10          **THE WITNESS:** Okay.  My recollection is that you

11   went out to court on 7/26.  So there's a very good possibility

12   that if it coincided with the date you went out when this

13   piece of mail was cell located, stamped and cell located,

14   there's a very good chance that up in that computer program

09:26:34AM 15   that Ms. Gates testified about that your cell location still

16   showed as I-2-6.

17          So it was probably written on the envelope I-2-6,

18   and then it was -- after all the processing was done it was

19   put in that envelope that she indicated, taken to the block

09:26:51AM 20   and then when they got to the block to your cell, the officer

21   saw you weren't there, checked at the front desk and found out

22   that you were out to court.

23   Q.   So she cell located this letter and found out I was still

24   in the cell?

09:27:08AM 25          **MR. BENITEZ:**  Objection, Your Honor, I object to

1    the "she" reference.  There's no --

2            **THE COURT:** Sustained.

3    **BY MR. LIVINGSTON:**

4    Q.   You saying that defendant Gates cell located this letter,

09:27:23AM 5  right?

6    A.   Actually, no.

7            **MR. BENITEZ:**  Objection again, Your Honor, there's

8    no evidence in the record that Ms. Gates did this.

9            **THE COURT:** Sustained.

09:27:29AM 10  **BY MR. LIVINGSTON:**

11   Q.   All right.  But that's the process, right?

12   A.   Whoever in the mail room handled that piece of mail would

13   have taken the piece of mail, along with the rest of the pile,

14   would have taken the pile and would have punched your inmate

09:27:46AM 15  identification number into the computer and whatever it said

16   on the screen it would have -- they would have entered that on

17   the form.

18   Q.   Okay. But this form right here?

19   A.   On the letter.  It would have been written on the letter

09:28:00AM 20  like we saw in the example several times, it would have I-2-6.

21   If that is the date that you went out to court, 7/26, it's

22   very likely that the cell change did not happen right away and

23   that you were still showing as being assigned to that cell.

24   Q.   All right.  When they did that, and they put the I-2-6 on

09:28:27AM 25  it, the cell location, right?  They would also put -- that's

1  all they would have put on it, right?

2  A.   No idea.   There's -- there's 700 correction officers in

3  the --

4  Q.   I'm not talking about correction officer.   I'm talking

09:28:47AM 5  about the person that did the mail.

6  A.   The mail room -- the only thing they would have written on

7  the piece of mail at that time would have been your cell

8  location, correct.

9  Q.   It would have been stamped on that date?

09:29:13AM 10  A.   Yes.

11  Q.   That letter would have been returned to the correspondence

12  office for hold after realizing I was out to court?

13  A.   That's correct.

14  Q.   It wouldn't be stamped again, would it?

09:29:36AM 15  A.   No.

16  Q.   It -- they wouldn't stamp it again?

17  A.   That wouldn't be normal procedure.

18  Q.   So they put this letter in a -- what kind of -- is it a

19  file or --

09:29:50AM 20  A.   Yeah, it's just in a -- I assume, and I can't testify to

21  this because I don't handle the mail, but through this --

22  through this testimony it would appear that the mail room

23  staff put it in a manila envelope with your name and DIN on it

24  and it's put in a section of a file cabinet that says out to

09:30:12AM 25  court.

1  Q.   All right.  They checked this file cabinet like once a

2  week or a day?

3  A.   Well, again, the practice that was what the grievance

4  ended up finding out, that the practice was that it was being

09:30:32AM 5  checked probably on a weekly basis.  I don't know exactly.  It

6  would depend on staffing issues at the time.  I believe there

7  were only three people assigned to the mail room and at that

8  time I believe there was one of the staff who were actually

9  out on a long-term sick.  So they weren't there during any of

09:30:54AM 10  this.

11  Q.   So when the mail is checked you say once a week, right?

12  A.   I can't say for sure.  I'm not there.  I don't know, I

13  can't say from experience how often it's checked.  It should

14  be checked -- at that point in time the practice was it should

09:31:18AM 15  be checked whenever they had the opportunity, and usually once

16  a week.

17  Q.   You see this exhibit, same exhibit?

18  A.   Yes.

19          **THE COURT:** Exhibit what?

09:31:35AM 20          **MR. LIVINGSTON:**  10, second page.

21          **THE COURT:** Thank you.

22  **BY MR. LIVINGSTON:**

23  Q.   On August 11th, '06, you see my name right there?

24  A.   Yes, I do.

09:31:45AM 25  Q.   And you see the entry?

1  A.    New York State Attorney General Albany.

2  Q.    Yeah.  So when they delivered this letter right here,

3  shouldn't that letter -- that letter from Syracuse be included

4  in that?

09:32:08AM 5  A.    If they had checked the out to court file and discovered

6  that you had mail on hold, yes.  It, you know, procedurally it

7  should have been included in that delivery, yes.

8  Q.    So that's what caused the delay then?

9  A.    That's not what caused the delay for the piece of mail

09:32:28AM 10  that has to do with your appeal.

11  Q.    It's the procedures that caused the delay?

12  A.    No, not necessarily.  The piece of mail that -- the piece

13  of mail in question that delayed your -- or that made your

14  appeal paperwork untimely was stamped as being received on the

09:32:49AM 15  date it was delivered August 17th, 2006.

16  Q.    So that procedure that delayed me from getting a letter

17  that was delivered to me on July 26th, but I was out to court,

18  couldn't be the procedure that delayed me from getting the

19  July 26th letter?

09:33:13AM 20  A.    The evidence doesn't suggest it because the stamp said it

21  was received in our office on August 17th, the day it was

22  delivered.

23  Q.    Don't the evidence also show that this was put in a out

24  of -- out to court file?

09:33:28AM 25  A.    No, it doesn't.

1  Q.   So what account for the OTC?  Somebody scribbled out on

2  there?

3  A.   We've been over this several times.  The OTC, there's

4  nothing there that indicates that the OTC was written by

09:33:41AM 5  anybody in the mail room.

6  Q.   It matches up with the person that wrote the cell

7  location?

8  A.   I don't know how you do that.

9  Q.   Same color pen, same -- look like same handwriting?

09:33:58AM 10          **MR. BENITEZ:**  Objection, Your Honor, argumentative.

11          **THE COURT:** Sustained.

12  **BY MR. LIVINGSTON:**

13  Q.   Is it the same color pen?

14  A.   I don't see it that way.

09:34:06AM 15  Q.   You don't see the color?

16  A.   If I could look at the original maybe I would have a

17  better --

18          **MR. LIVINGSTON:**  Can I show him this?

19          **THE COURT:** Sure.

09:34:16AM 20          **THE WITNESS:** Again, I can't tell for sure the

21  scribble -- the scribble mark kind of covers everything that I

22  can see here.

23  **BY MR. LIVINGSTON:**

24  Q.   But one thing you sure about can you see the color of it?

09:34:39AM 25  A.   It appears to be green.

1  Q.    And the other scribble mark, too, correct?

2  A.    Yes.

3  Q.    And the OTC that's underneath it, the scribble is green

4  too?

09:34:49AM 5  A.    Yeah, it appears to be.

6  Q.    So same pen?

7  A.    I can't say that for sure.  There are a lot of green pens.

8  Q.    Okay. How long mail from Albany usually take to arrive in

9  Elmira?

09:35:26AM 10  A.    I have no idea.  I don't work -- I don't work directly in

11  the mail room.  If I was going to venture a guess I would say

12  it's going to take anywhere from 3 to 7 business days

13  depending on when it's mailed and what route it takes to get

14  there.

09:35:43AM 15  Q.    What route it takes, what that mean?

16  A.    How it's batched and what Postal Service or postal office

17  it touches down at before it arrives at our Elmira location.

18  Q.    So would you agree that the post -- United States Postal

19  Service delivered this letter to Elmira?

09:36:11AM 20  A.    I already agreed to that.

21          **THE COURT:** "This," you're talking about Exhibit 4?

22          **MR. LIVINGSTON:**  Yes.

23  **BY MR. LIVINGSTON:**

24  Q.    So what you said, seven days tops you give it?

09:36:26AM 25  A.    Yes.

1  Q.   So from July 26th, 2006, to August 17th, 2006, that's like

2  over, that's like three weeks, right?

3  A.   That's correct.

4  Q.   That would be like too long or --

09:36:51AM 5  A.   I'm not sure what you're asking me here.

6  Q.   You said it probably take seven business days?

7  A.   Correct, usually.

8  Q.   So three weeks would be longer than the seven business

9  days, right?

09:37:09AM 10  A.   Yes, it would.

11  Q.   Oh, yeah.  Your report that you did on the investigation

12  of the grievance, it never did once deny that this letter was

13  withheld and delivered to me -- delivery to me was delayed?

14  A.   As I stated, the grievance was not specific to any piece

09:37:49AM 15  of mail, any entity that the mail was coming from.  It just

16  generally said that there were pieces of legal mail that were

17  withheld for a longer period of time than normal when you

18  returned from out to court.

19  Q.   Okay. So the legal mail that was -- I mean the mail that

09:38:16AM 20  was spoke about or referred to in the grievance, you never --

21  you did never deny that it was withheld and delayed, right?

22  A.   No.

23  Q.   Do you know who is responsible for delaying this legal

24  mail?

09:38:41AM 25  A.   No, I do not.

1  Q.    Would you tell me if you did?

2  A.    Surely I would.

3  Q.    Your orders come from defendant Whitten during --

4  regarding mail room?

09:39:04AM 5  A.    She is my supervisor.  Any response or any decision I

6  would make about the mail room would be moved up the chain of

7  command to her for review and approval or amendment or denial.

8  Q.    So that's a yes or a no?  You didn't really answer.

9              MR. BENITEZ:  Objection, form.

09:39:33AM 10             THE COURT: Sustained.

11  BY MR. LIVINGSTON:

12  Q.    So you didn't really answer my question.  Is that your --

13  she the one that give you orders regarding the mail room

14  issues or activities or --

09:39:50AM 15  A.    The form of the question is -- it's hard for me to answer

16  because she doesn't necessarily give me orders about the mail

17  room.  She's not really involved in the mail room.  She is

18  another level removed from the mail room operation above me.

19             She would have just about no cause to go to the

09:40:13AM 20  mail room except for going on rounds around the facility and

21  stopping in and seeing people.  The only time she would have

22  any dealings with the mail room would be if an issue came to

23  her and then came down to me and went to the mail room and

24  then back up the chain of command or if there was a purchase

09:40:32AM 25  or something like that that had to be made, it would come

1  through me to her and she would be the final sign off.

2  Q.   But if she wanted to tell you something, that's who it

3  would come from, right?

4          **MR. BENITEZ:**  Objection.

09:40:45AM 5          **THE COURT:** Sustained.  Are you almost done?

6          **MR. LIVINGSTON:**  Excuse me?

7          **THE COURT:** Are you almost done?

8          **MR. LIVINGSTON:**  No.

9          **THE COURT:** Well, you better.  We're not going to go

09:41:00AM 10  through the same things over and over again.

11  **BY MR. LIVINGSTON:**

12  Q.   So what was the fix that occurred after my grievance?

13  A.   I answered this question, but I will answer it again.  The

14  determination was that the legal, out to court legal mail file

09:41:30AM 15  would be checked daily.

16  Q.   Yesterday you said that there was no deputy superintendent

17  of program?

18          **MR. BENITEZ:**  Objection, Your Honor.  This has been

19  asked and answered.

09:42:01AM 20          **THE COURT:** Sustained.  We're not going to keep

21  repeating questions.

22          **MR. LIVINGSTON:**  Okay.  Just trying to be thorough,

23  Your Honor.

24          **THE COURT:** I understand.  I'm letting you be

09:42:19AM 25  thorough, but I'm not going to let you be repetitive.

1    **MR. LIVINGSTON:** That's it for this one.

2    **THE COURT:** Thank you.  Mr. Benitez?

3    **MR. BENITEZ:** I have no questions of this witness,

4 Your Honor.

09:42:39AM 5    **THE COURT:** You may step down, thank you.

6    (**WHEREUPON**, the witness was excused).

7    **THE COURT:** Call your next witness.  Call your next

8 witness.

9    **MR. LIVINGSTON:** Call defendant Whitten.

09:42:53AM 10    **PLAINTIFF'S WITNESS, NANCY WHITTEN, SWORN**

11                    **DIRECT EXAMINATION**

12    **THE CLERK:** Please, state your name and spell it for

13 the record.

14    **THE WITNESS:** Nancy R. Whitten, N-A-N-C-Y, R,

09:43:33AM 15 W-H-I-T-T-E-N.

16    **THE CLERK:** Thank you.

17    **THE COURT:** You may proceed.

18 **BY MR. LIVINGSTON:**

19 Q.   Good morning.

09:43:46AM 20 A.   Good morning.

21 Q.   What was your job in Elmira?

22 A.   I had several jobs.  What period of time are you talking

23 about?

24 Q.   Around July 2006.

09:44:18AM 25 A.   Okay.  In the summer, July of 2006 I transferred to Elmira

1    to assume the position of deputy superintendent for program

2    services.

3    Q.    Where you transfer from?

4    A.    Southport Correctional Facility as deputy superintendent

09:44:32AM 5    for program services.

6    Q.    Oh, so you had the same title over there?

7    A.    That is correct.

8    Q.    What job did you do?

9    A.    I was deputy superintendent for program services.  I

09:44:48AM 10    oversaw all of program services for Elmira Correctional

11    Facility and the department heads, the staff that supervised

12    those programs.

13    Q.    Do you remember a memo that you wrote dated August 30th,

14    2006?

09:45:14AM 15    A.    No, I have no recollection of what I did back in 2006.

16    Q.    You not a deputy superintendent?

17    A.    I've been retired since 2009.

18              **MR. LIVINGSTON:**  Can I have this 9C?

19              **THE CLERK:** Okay.  Plaintiff's Exhibit 9C is marked.

09:45:54AM 20              **MR. LIVINGSTON:**  Thanks.

21    **BY MR. LIVINGSTON:**

22    Q.    You recognize that?

23    A.    Yes, that's my signature and my memo.

24              **MR. LIVINGSTON:**  Evidence.

09:46:31AM 25              **THE COURT:** You move it into evidence?

1        **MR. LIVINGSTON:** Yes.

2        **THE COURT:** Any objection?

3        **MR. BENITEZ:** No objection.

4        **THE COURT:** Plaintiff's Exhibit 9C will be received.

09:46:39AM 5        (**WHEREUPON**, Plaintiff Exhibit 9C was received into

6    evidence).

7    **BY MR. LIVINGSTON:**

8    Q.   You say you don't recall any of this?

9    A.   The most recollection I have is being in the courtroom and

09:46:52AM 10   having it all brought back, but individual items, no, from the

11   time that I've been retired I have -- don't remember

12   individual pieces of correspondence that I do --

13   Q.   You can see that?

14   A.   Yes.  Well, as far as it's better bigger.

09:47:08AM 15   Q.   Yeah.

16   A.   Thank you.

17   Q.   Can you read that?

18   A.   Yes.

19   Q.   Please?

09:47:13AM 20   A.   Well, per our conversations and as a result of the

21   investigation of grievance EL144-06, this is to confirm that

22   effective immediately legal mail being held for out to court

23   inmates will be cell located daily to determine if the inmate

24   has returned to the facility.  As soon as it has been

09:47:33AM 25   determined that the inmate has returned to the facility, his

1  legal mail will be processed.

2  Q.  So who were you speaking to?  Who were you speaking to

3  with this memorandum?

4  A.  It says I sent the memo to Mr. Bills, and there was two

09:47:52AM 5  reasons for the memo.  If you see in the document part of it

6  he and I had spoken as a result of the investigation for the

7  grievance.

8         And part of -- as Mr. Bills explained, part of the

9  grievance process is if there is something that needs to be

09:48:08AM 10  corrected, we try to make sure that the correction occurs and

11  this is one of the corrections, that instead of having the

12  mail located -- out to court mail being located for the

13  inmates periodically, I made the determination it needed to be

14  done daily.  That's so all inmates that were in out to court

09:48:31AM 15  status, we made sure that it was done daily.

16  Q.  So you was speaking to defendant Bills right here?  That's

17  my question, that's my only question.

18  A.  Yes, it says to William Bills SCC.

19  Q.  I'm just trying to make it clear.  That's all.

09:48:58AM 20         Do you know what caused the delay?

21  A.  I have no knowledge of the daily operations and what

22  caused the delay, no.

23  Q.  But you investigated it, you didn't find out the reason?

24  A.  I have no idea.  I had no idea based on -- my response was

09:49:12AM 25  based on the investigation that -- what was written down in

1  the grievance process.

2  Q.   All right.  So during the investigation, in order to fix

3  it, that's your -- your memo seem to be wanting to do, you had

4  to find out what caused it to be fixed, what needed to be

09:49:31AM 5  fixed, right?

6  A.   And the point being was -- the need to be fixed was that

7  the mail was not being checked daily.  The out to court mail,

8  the legal mail for the out to court inmates was not being

9  checked daily as determined by the investigation.  I don't

09:49:53AM 10  recollect the exact wording, but I think it was periodically.

11  Q.   So that part was broken?

12  A.   Well, it needed correction.

13  Q.   Needed to be fixed?

14           MR. BENITEZ:  Objection, Your Honor.

09:50:08AM 15           THE COURT: Sustained.

16           MR. LIVINGSTON:  Your Honor, I would like to say

17  something because --

18           THE COURT: No, you can't say something.  You'll

19  have an opportunity, you can testify.

09:50:18AM 20           MR. LIVINGSTON:  All right.  According to his

21  objection, that's why I wanted to clarify because these --

22           THE COURT: His objection?  You wanted to respond to

23  his objection?

24           MR. LIVINGSTON:  Yes.

09:50:26AM 25           THE COURT: Okay.

1          **MR. LIVINGSTON:** Because these witnesses they come

2    up here long-winded and then I don't get to ask the question,

3    and then when I ask the question they say they answered it

4    already.

09:50:35AM 5          **THE COURT:** Well, they did though.  No, in this case

6    she certainly did.  She said okay, that part was broken and

7    the answer was well, it needed correction.  And then you asked

8    another question along the same lines and I sustained the

9    objection.  We're not going to allow repetition.

09:50:56AM 10   **BY MR. LIVINGSTON:**

11   Q.   During your investigation, did you find out -- did you

12   surmise that it was my fault for the delay?

13          **MR. BENITEZ:**  Objection, form of the question.

14          **THE COURT:** Sustained.

09:51:20AM 15   **BY MR. LIVINGSTON:**

16   Q.   Was I the cause of the delay?

17   A.   I have no knowledge of what the cause of the delay was.

18   Q.   That's why you have to fix that part that you fixed

19   because you didn't have any knowledge?

09:51:40AM 20   A.   No.

21          **MR. BENITEZ:**  Objection.

22          **THE COURT:** Overruled.  You can answer that.

23          **THE WITNESS:** The part that needed to be fixed was

24   because procedurally the mail should have been -- that type of

09:51:50AM 25   mail should have been checked daily so that inmates coming

1  back from out to court were afforded the very best opportunity

2  to get their mail.  Simple as that.

3  **BY MR. LIVINGSTON:**

4  Q.   So it wasn't my fault?

09:52:04AM 5  A.   I already said I have no idea.

6  Q.   I don't have nothing to do with the checking of the mail,

7  am I?

8  A.   With the checking of the mail?

9  Q.   Yes.

09:52:16AM 10  A.   That's all done in the correspondence office.

11  Q.   And I don't work there or I don't go there or anything?

12          **MR. BENITEZ:**  Objection, asked and answered.

13          **THE COURT:** Sustained.

14  **BY MR. LIVINGSTON:**

09:52:41AM 15  Q.   So why did you conclude that the out to court folder is

16  needed to be monitored on a daily basis?

17  A.   Why did I conclude that?

18  Q.   Yes.

19  A.   I've already -- I'll repeat it, because inmates coming

09:52:57AM 20  back from out to court, if they had legal mail, we want to

21  give them every opportunity to get it.  If the mail was not

22  being checked daily, it needed to be checked daily.

23  Q.   Have any -- how -- who would be your boss?

24  A.   The superintendent.

09:53:20AM 25  Q.   That's it?

1  A.    That's correct.

2  Q.    He didn't tell you to hold my legal mail, did he?

3  A.    He didn't.  He gives me no instruction regarding opening

4  mail.  It's not my job to open mail.  I don't open mail.

09:53:40AM 5  Q.    No, I didn't say open.  I said hold?

6  A.    Hold?  I'll change the word.  I have no jurisdiction, no

7  authorization to hold mail and he did not give me any

8  authorization to hold anyone's mail.

9  Q.    Okay. Would a outside agency speak to you regarding prison

09:54:08AM 10  mail room activities?

11  A.    No.

12  Q.    Who would they speak to if they had a inquiry?

13          **MR. BENITEZ:**  Objection.

14          **THE COURT:** Sustained.

09:54:19AM 15  **BY MR. LIVINGSTON:**

16  Q.    You said you didn't have a direct supervision of the mail

17  room?

18  A.    That's correct.  I don't directly supervise the mail room.

19  Q.    So why did you answer the grievance and not the assistant

09:55:02AM 20  deputy superintendent of programs?

21  A.    The assistant deputy superintendent for programs oversaw,

22  and I believe Mr. Bills talked about this a little bit

23  yesterday, the assistant deputy superintendent of programs

24  services is in charge of the reception center.  The mail room

09:55:18AM 25  happens to be located in the reception center, but the mail

1  room in any facility is under the jurisdiction of a deputy

2  superintendent for program services, not the assistant deputy.

3  It's a little cloudy, I guess you could say, for Elmira just

4  because of the location of the mail room, the fact that it is

09:55:37AM 5  there.  So he is available, but ultimately the mail room falls

6  under my jurisdiction.

7  Q.   Do you remember doing the interrogatory from me?

8  A.   Yes.

9  Q.   Do you remember this question and response?

09:56:11AM 10          **THE COURT:** Do you have a page or reference?

11          **MR. LIVINGSTON:**  Second page of supplement,

12  defendant Whitten's response to defendants' first set of

13  interrogatory dated January 18 of this year.

14  **BY MR. LIVINGSTON:**

09:56:41AM 15  Q.   Response?

16          **THE COURT:**  Why don't you ask her the question,

17  with the question and the answer?

18          **MR. LIVINGSTON:**  Yes.

19  **BY MR. LIVINGSTON:**

09:56:47AM 20  Q.   I asked you when did you -- no, not that one.  Number two,

21  describe your job in detail in regards to the Elmira

22  Correctional Facility mail room.

23          And I guess you said object.  This interrogatory is

24  irrelevant.  Without waiving objection, I had oversight of

09:57:13AM 25  facility programs and did not have direct supervision of the

1   mail room, that would have -- that would have been the

2   assistant deputy superintendent of programs.

3           Do you remember that response?

4   A.   Right.   Yes.

09:57:30AM 5   Q.   So that's -- that response was incorrect?

6   A.   Like I said, with Elmira Correctional Facility, the

7   day-to-day operations was supervised by Mr. Bills . The

8   assistant deputy superintendent was available, but ultimately

9   the final overseeing of the program, if there was anything

09:57:51AM 10   that the assistant deputy superintendent noticed because of

11   the location, because it fell in Elmira reception, he would

12   ultimately have to respond, come to me and I was the final

13   authority for the mail room.

14           So as I said before, it's a little cloudy in Elmira

09:58:10AM 15   because of the location of the mail room and the fact that

16   there is an assistant deputy superintendent there in the

17   reception center, but ultimately the mail room falls under the

18   jurisdiction, the final jurisdiction for the deputy

19   superintendent.

09:58:24AM 20   Q.   So why did he respond to the grievance or --

21   A.   Well, from what I can remember from the grievance process,

22   any program services grievances when -- let me back up, if I

23   may, and explain a little bit.

24           When an inmate files the grievance an investigation

09:58:58AM 25   is done by the area.   Hence, Renee Gates and William Bills did

1  an investigation.  It goes to a grievance committee as

2  Mr. Bills explained, it has representatives on it.  They make

3  a decision.  You have the right to appeal that decision or any

4  inmate has the right to appeal that decision.

09:59:17AM 5          And then ultimately if there is an appeal, it's

6  going to go to the deputy superintendent that oversees the

7  general area.  That's why I got that because as I said before,

8  the correspondence office ultimately falls under my

9  jurisdiction.  So the grievance was a program services

09:59:35AM 10  grievance, so I responded.

11  Q.   So they skipped over the assistant deputy?

12  A.   Correct, because he does not directly fall in line for

13  program services grievances because he was the reception --

14  what we call the reception deputy superintendent, the

09:59:50AM 15  assistant deputy superintendent for program services.  His

16  primary responsibility was the reception center processing.

17  Q.   You know what happened as a result of that grievance was?

18  A.   That the mail was going to be cell located, the legal mail

19  was going to be cell located daily.  That's to the best of my

10:00:15AM 20  recollection.

21          **MR. LIVINGSTON:** That's it, thank you.

22          **THE COURT:**  Thank you.

23          **MR. BENITEZ:**  I have no questions of this witness.

24          **THE COURT:** Thank you, you may step down.  Thank you

10:00:24AM 25  very much.

1        Ladies and gentlemen, at this time we're going to

2   take a recess for approximately 15 minutes.  I'd ask you not

3   to discuss the matter or allow anybody to discuss the matter

4   with you.  At this time the jury may step down, we'll stand in

10:00:33AM 5   recess for 15 minutes.  Thank you.

6                (**WHEREUPON**, the witness was excused.)

7                (**WHEREUPON**, there was a pause in the proceeding.)

8           **THE COURT:** Ready to proceed?  Are you going to

9   testify next?

10:30:47AM 10           **MR. LIVINGSTON:**  Yes.  I would like to ask how

11  would I do this?  I would have my exhibit on the stand with me

12  and when I need to put it in evidence same procedure?

13           **THE COURT:** Yes, sure.  Basically we do it in

14  narrative style.  If you have an exhibit, it would have to be

10:31:05AM 15  marked, show it to Mr. Benitez and then you can move its

16  admission, I'll make a decision.

17           **MR. LIVINGSTON:**  I don't get down and show him --

18           **THE COURT:** Well, he can come up to you, okay?

19           **MR. BENITEZ:** I'll approach.

10:31:20AM 20           **MR. LIVINGSTON:**  Okay.

21           **THE COURT:** All right.  Bring the jury out.

22           (**WHEREUPON**, the jury is present).

23           **THE COURT:** Ready to proceed.

24           **MR. LIVINGSTON:**  Yes.  I'm calling me.

10:32:31AM 25           **THE COURT:** Okay.

1    **PLAINTIFF'S WITNESS, DETROY LIVINGSTON, SWORN**

2    **DIRECT EXAMINATION**

3    **THE CLERK:** State your name and spell it for the

4    record.

10:32:50AM 5    **THE WITNESS:** Detroy Livingston, D-E-T-R-O-Y,

6    L-I-V-I-N-G-S-T-O-N.

7    **THE CLERK:** Thank you.  Have a seat.

8    **MR. LIVINGSTON:** Good morning.  In July of 2006 I

9    initiated a writ of error coram nobis in Appellate Division

10:33:26AM 10    Second Department located in Brooklyn, New York.

11    And in that writ of error coram nobis I stated that

12    appellate lawyer that I was given by the court didn't raise

13    some critical issue that would have overturned, reversed my

14    conviction.

10:33:55AM 15    And in this petition I said it was a part of the

16    record, meaning that it was transcribed in the court's

17    transcript, like this lady is doing, and so it was obviously

18    part of the record and he should have known and submitted on

19    appeal.

10:34:28AM 20    And in this writ I told them that during jury

21    deliberation that when the jury asked the judge or the Court a

22    question, they didn't follow procedure that by law says they

23    must follow.  That -- what happened the jury asked -- I don't

24    remember exactly what they asked, but it's written down here,

10:35:03AM 25    you can read it, so they sent a note out to the Court, the

1 judge gets it, he reads it and what he was supposed to do was

2 notify me and my attorney and then we discuss it, what should

3 be the response to the note.

4       What happened during that time he, like,

10:35:36AM 5 disregarded the procedure.  Instead of calling me and my

6 attorney back to court and discuss what we was gonna do about

7 the note, he sent a law clerk to they room, I don't know what

8 was said by the law clerk to the jury.  Then they continued to

9 deliberate.  Then they sent another note and they took like

10:36:08AM10 two hours to notify us, me and my attorney.

11       And that's a violation, too, because the law says

12 we must be notified immediately.  And when we was notified we

13 came out and my attorney told him we want to do this, we want

14 to submit this, too, in response to they inquiry.

10:36:41AM15       And he basically didn't do what we asked.  He did

16 it his way.  And they sent another note trying to get another

17 note on a issue, he didn't do it that way again.  He took

18 another while and finally he told them -- I think they wanted

19 a read back of testimony from one of the witness.

10:37:23AM20       And it didn't take place that way so I got

21 convicted unfortunately.  And I did the appeal, the lawyer

22 didn't put that issue inside the brief.  That's the argument

23 to the appellate court.

24       And I didn't know what -- I had the issue because I

10:37:57AM25 didn't know the law at the time that good, you know, during my

1  years, you know, me and other people, you know, sit down and

2  discuss it.  So one day I'm at Elmira law library and me and

3  these persons was speaking and they was talking about this

4  issue right here and I said "oh, I got that issue right

10:38:19AM 5  there."  So the person, I think his name is Adam Jameson, he

6  was in the crowd speaking by the -- and I said, "you know, I

7  got that issue right there," he said, "let me see it."

8  So I gave him the minutes, you know, the trial

9  record.  And he read it.  He said, "yeah, you got that

10:38:38AM 10  record."  He said your issue is even stronger than the dude

11  that he was speaking to.  He said, "your issue is stronger

12  than his."

13  So he said he would like to help me do it, you

14  know, the brief with the error coram nobis because he said the

10:38:54AM 15  lawyer supposed to did it was supposed to include that inside

16  the appellate brief.

17  So he said the right vehicle to petition the Court

18  with was the error coram nobis.  So we did this, this is right

19  here included, it's about 200 page.  The first couple pages is

10:39:29AM 20  the writ, our argument itself.  And then the other parts,

21  these parts, is the trial minutes.  So we had to break it down

22  to show them where the trial minutes, the error occurred and

23  what -- exactly verbatim what, you know, the error was.

24  So we did that.  And the Appellate Division, they

10:40:04AM 25  ruled against it.  They didn't really say why, like, break

1    down the merits or anything.  They just said I didn't show
2    that that counsel was ineffective.  That's what writ of error
3    coram nobis is, a petition stating that the appellate lawyer
4    was ineffective.

10:40:29AM 5          But basically that's -- that's how they do it
6    anyway because I never seen a case where they -- the
7    Appellate Division will reverse they own decision.  They will
8    let the higher court do it, the New York State Court of
9    Appeals, that's the highest in the state.

10:40:49AM 10         So the person that was helping me, Jameson, he's
11   like just write a petition, you know, appeal to the Court of
12   Appeals.  And that's what I did.

13          I would like to put this into evidence.  This is
14   exhibit --

10:41:09AM 15         THE COURT: Pass it to me and I'll mark it.
16   Plaintiff's 2.

17          THE CLERK: Plaintiff's Exhibit No. 2 has been
18   marked.

19          THE COURT: Do you want to see it, Mr. Benitez?

10:41:52AM 20         MR. BENITEZ:  Thank you, Judge.

21          THE COURT: Are you moving its admission?

22          MR. LIVINGSTON: Yes, I would like to put it in
23   evidence.

24          THE COURT: Mr. Benitez?

10:42:50AM 25         MR. BENITEZ:  Just for the record, I'm going to

1  object upon it being hearsay and prejudicial and bolstering

2  grounds.

3          **THE COURT:** Okay, do you want to approach side bar?

4  You can come off the stand for a second.

10:43:13AM 5          (**WHEREUPON**, a discussion was held at side bar out

6  of the hearing of the jury.)

7          **THE COURT:** Do you want this all in?

8          **MR. LIVINGSTON:** Yes.

9          **THE COURT:** Why?

10:43:33AM 10          **MR. LIVINGSTON:** Because like I was testifying,

11  they might want to see what I was talking about, you know, the

12  issue and see the exhibit existed as I said.

13          **THE COURT:** Well, I think you can stipulate to that,

14  right?  That there was a petition.  I'm concerned summary of

10:43:51AM 15  the case and information here, that's going to be destructive

16  to you.

17          **MR. LIVINGSTON:** I don't understand why it would

18  be.

19          **THE COURT:** This is the whole background here that

10:44:01AM 20  I've already ruled should not be gotten into.

21          **MR. LIVINGSTON:** So we can discard that part or --

22          **THE COURT:** I don't know why you gain anything by

23  having the whole petition in.  There's a stipulation you want

24  before the jury that you filed the petition for writ of error

10:44:18AM 25  coram nobis, correct?

1          **MR. LIVINGSTON:**  Right.

2          **THE COURT:** Why do you need the writ itself?

3          **MR. LIVINGSTON:**  I don't know, maybe the jury want

4 to see it, I don't know if they want to.  They might be

10:44:28AM 5 curious what I'm speaking about.

6          **THE COURT:** There will be a stipulation I think.

7          **MR. BENITEZ:**  I can stipulate.

8          **THE COURT:** The petition was filed.  I think it's

9 going to be prejudicial to you to get this in.  There's no

10:44:41AM 10 denial.

11          **MR. LIVINGSTON:**  So which part would you say?

12          **THE COURT:** Well, the whole background regarding

13 what you were convicted of and the facts of that is all in

14 here.

10:44:58AM 15          **MR. LIVINGSTON:**  You talking about the actual crime

16 itself?

17          **THE COURT:** Right, it's in all here.  I don't know

18 what you gain by putting this in other than they already know

19 you filed this petition.  If there's a stipulation, I gave

10:45:19AM 20 them an instruction that there was a petition for writ of

21 error coram nobis filed with the Second Department.  I don't

22 know what the date is, but -- accomplishes the same purpose,

23 right?

24          **MR. LIVINGSTON:**  I don't know.  I'm -- I don't see

10:45:37AM 25 no harm in it because they know I'm in prison for a long time,

1   so they probably put two and two together saying this is what
2   I said, you know.  So I don't know.  But it's up to you.  I
3   would like to put it in there.
4           **THE COURT:** You want it in there with the facts
10:45:55AM 5   regarding the background of your crime?
6           **MR. LIVINGSTON:**  Yeah.
7           **THE COURT:** You don't care about that?
8           **MR. LIVINGSTON:**  No.
9           **THE COURT:** I'm making it clear I think it's
10:46:01AM10   prejudicial to you, but you want it in there?
11          Any objection?
12          **MR. BENITEZ:**  No objection, Judge.
13          **THE COURT:** All right.
14          (**WHEREUPON**, side bar discussion concluded.)
10:46:28AM15          **THE COURT:** Plaintiff's 2 will be received.
16          (**WHEREUPON**, Plaintiff Exhibit 2 was received into
17   evidence).
18          **MR. LIVINGSTON:** Like I said, I filed it -- I filed
19   the error coram nobis, the Second Department denied it.  They
10:46:59AM20   didn't specifically say why they denied it.
21          Then I know that they probably would have because
22   they usually leave these kind of petition to the -- to the
23   highest court in the state, New York State Court of Appeals.
24          So all I had to do was file appeal of that
10:47:32AM25   decision.  And I did that with a letter -- in letter form I

think it's to Judith -- Honorable Judith Kaye, she's a nice

lady.

I like to put -- submit this in as exhibit.  It's

1.

10:48:02AM **THE COURT:** Mark this as Plaintiff's Exhibit 1.

**THE CLERK:** Plaintiff's Exhibit 1 has been marked.

**THE COURT:** Mr. Benitez?

**MR. BENITEZ:**  Thank you, Judge.  No objection, Your

Honor.

10:49:27AM **THE COURT:** Move the admission of Plaintiff's

Exhibit 1?

**MR. LIVINGSTON:** Yes.

**THE COURT:** It will be received.

(**WHEREUPON**, Plaintiff Exhibit 1 was received into

10:49:38AM evidence).

**MR. LIVINGSTON:** So I filed a appeal of that Court's

decision with Judge Judith Kaye.  In it I spelled out in a

abbreviated form of what Exhibit 2 was arguing.

Basically I told her that the appellate lawyer

10:50:16AM didn't submit some very good issue that had merits when he

should have, that would have got me reversed from my

conviction.

And I -- when I submitted it, I didn't -- I didn't

send this or Exhibit 2 with my application.  So they call this

10:50:49AM a leave application.

1     So the court clerk sent that letter that I been
2 disputing all morning and prior, the July 26th letter and
3 envelope.  They sent that to me telling me that I must submit
4 additional submission they call it, they didn't spell it out
10:51:19AM 5 for me, but during my research I find out what they meant by
6 additional submission.
7          And I like to submit Exhibit 20.
8          **THE COURT:** Exhibit 20.
9          **THE CLERK:** Plaintiff's Exhibit 20 has been marked.
10:52:07AM 10          **MR. BENITEZ:**  I have no objection.
11          **THE COURT:** You move its admission?
12          **MR. LIVINGSTON:** Yes, but --
13          **THE COURT:** Plaintiff's Exhibit 20 will be received.
14          (**WHEREUPON**, Plaintiff Exhibit 20 was received into
10:53:31AM 15 evidence).
16          **MR. LIVINGSTON:** Can I say something on the
17 record -- off the record?
18          **THE COURT:** Do you want to approach?
19          **MR. LIVINGSTON:** Yes.
10:53:40AM 20          **THE COURT:** Sure.
21          (**WHEREUPON**, a discussion was held at side bar out
22 of the hearing of the jury.)
23          **MR. LIVINGSTON:**  The reason I don't know if they
24 gonna look at the whole book, that's why -- remember we was
10:54:00AM 25 speaking before about just the relevant part, pertinent part

1    and I marked the part that I want to read.  They might, you

2    know, he said mark it just, but you can just give them the

3    pages that I want that's relevant to what I'm testifying to.

4          **MR. BENITEZ:**  I have no objection to the

10:54:24AM 5    completeness, I mean, I want the whole thing in.

6          **MR. LIVINGSTON:**  Okay.

7          **THE COURT:** Okay.

8          **MR. LIVINGSTON:**  Okay, the whole thing then.

9          **THE COURT:** Exhibit 20 is received in total.

10:54:39AM10          (**WHEREUPON**, side bar discussion concluded.)

11          **MR. LIVINGSTON:** Before I get to that I might have

12    skipped a pertinent -- I like to put Exhibit 5.

13          **THE COURT:**  Mark Plaintiff's Exhibit 5.

14          **THE CLERK:** Plaintiff's Exhibit 5 has been marked.

10:56:10AM15          **MR. BENITEZ:**  No objection, Your Honor.

16          **THE COURT:** You move its admission?

17          **MR. LIVINGSTON:** Yes.

18          **THE COURT:** Plaintiff's 5 will be received.

19          (**WHEREUPON**, Plaintiff Exhibit 5 was received into

10:56:32AM20    evidence).

21          **MR. LIVINGSTON:** Like I said, after I submitted my

22    application for leave to appeal the lower court's decision,

23    denial of the writ of error coram nobis, the clerk of New York

24    State Court of Appeals sent me a letter dated July 26th, 2006,

10:57:05AM25    and in this letter it says -- it say your application for

1 certificate permitting a further appeal has been assigned to

2 the Honorable Judith S. Kaye, Chief Judge of the Court of

3 Appeals, Court of Appeals, 20 Eagle Street, Albany, New York,

4 and the zip code.

10:57:31AM 5     The papers you have submitted on the application

6 are being forward to the assigned judge.  Additional

7 submissions, if any, must be mailed within three weeks --

8 remember the three weeks, please -- after the date of this

9 letter and copy must be served on the adverse party.

10:57:55AM 10     Any responsive communication must be mailed within

11 two weeks after the due date for the applications.  Additional

12 submission with they copy also served on adverse party,

13 particular written attention should be given to identifying

14 reviewability and preservation issues, rules of practice,

10:58:20AM 15 Section 500.20A and it's signed by Stewart M. Cohen, I guess

16 he's the chief of Clerk of the Court at the time.

17     Then it got the Kings County district attorney's

18 name and address on it, Charles Hines on it.  Now, this

19 letter, this what this lawsuit is about because they -- they

10:58:54AM 20 held it for three weeks and I had three weeks to submit the

21 additional documents.

22     So they held it past the due date for the

23 submission of the additional submissions.

24     Now, they rules -- the rules of that court, Court

10:59:20AM 25 of Appeals, rules of practice, which is marked Exhibit 20 into

1   evidence, all right.

2           According to the court rules --

3           **THE COURT:** What rule are you reading from?

4           **MR. LIVINGSTON:**  Right now, reading from 5.6,

11:00:22AM 5   primary election session procedures.  It says motion for

6   permission to appeal.  That's what I submitted to that court.

7   Permission to appeal.  It says within -- section B, paragraph

8   3 it says within the time directed by the Court -- by the

9   Clerk of the Court movant shall file ten copies of movant's

11:00:55AM 10   Appellate Division brief.  That's what initiated the writ in

11   the lower court.  And where applicable the record or appendix.

12   The original file with applicable which movant shall obtain.

13           Then another rule states under criminal leave

14   application, Section 5.20 criminal leave application, that's

11:01:35AM 15   the one I should have read -- Section 2 of that same rule

16   states orders of intermittent appellate court determine

17   application for writ of error coram nobis.  That's what I

18   filed.

19           An application for leave to appeal from an

11:02:17AM 20   intermediate appellate court order determining application for

21   error coram nobis relief shall include the order and decision

22   sought to be appealed from; two, the papers in support of

23   opposing the application filed in the intermediate appellate

24   court; and the intermediate appellate court Decision and Order

11:02:45AM 25   sought to be vacated as well as the briefs filed on the line

1  of appeal.

2          That's what they meant when they asked for

3  additional submission.  They wanted me to file the actual

4  writ, which is marked Exhibit 2; and also the DA's submission

11:03:18AM 5  with my application for leave.

6          And they said -- and this part is what would happen

7  if I don't submit it in the time that they describe.  500.16,

8  failure to proceed or file papers.  Dismissal of appeal,

9  that's what would happen.

11:03:52AM 10          If appellant has not filed or served the papers

11  required by Section 5.11, 5.12 or 5.26(a) of this part within

12  the time set by the Clerk's Office or otherwise prescribed by

13  this court, the Clerk of the Court shall enter an order

14  dismissing the appeal.  That's what happened when I couldn't

11:04:20AM 15  submit the paper to the court.

16          They dismissed it, they didn't even get to the

17  merit of it.

18          **MR. BENITEZ:**  Objection, misrepresentation of facts

19  there, Judge.  There's nothing in the --

11:04:34AM 20          **THE COURT:** Sustained.  That will be stricken.  The

21  last part will be stricken.

22          **MR. LIVINGSTON:**  So when I didn't receive that

23  paper, that letter dated July 26th, I couldn't -- I didn't --

24  I didn't know that the Court wanted these papers because I

11:05:04AM 25  didn't receive the papers.

1          When the defendants finally gave me the paper on

2   August 17th, I didn't know what to do.  I was -- I didn't know

3   what to do.  I was like, man, what they do this, not again.

4   Always something with this case, right?

11:05:48AM 5          So when they gave me the letter, I tried to contact

6   Mr. Cohen of the Court of Appeals and tell him that I just

7   received the letter and can I have extension of time to file

8   these additional submissions they requested.

9          I like to put this in.

11:06:36AM 10         **THE COURT:** This is Plaintiff's 21.

11         **THE CLERK:** Plaintiff's Exhibit 21 has been marked.

12         **MR. BENITEZ:**  No objection.

13         **THE COURT:** You move its admission?

14         **MR. LIVINGSTON:**  Yes.

11:07:06AM 15        **THE COURT:** Plaintiff's 21 will be received.

16         (**WHEREUPON**, Plaintiff Exhibit 21 was received into

17   evidence).

18         **MR. LIVINGSTON:**  I like to read what it says.  Got

19   my name, the address of Elmira, got Stewart M. Cohen, clerk,

11:07:31AM 20  New York State Court of Appeals, 20 Eagle Street, Albany, New

21   York 12207.

22         And Re:  The subject: People vs. Livingston,

23   application for leave dated the 21st of August 21st, 2006.

24         It says Dear Mr. Cohen: I just received the letter

11:07:59AM 25  you sent me informing me that my application was assigned to

1 the Honorable Judge Judith S. Kaye.  After reading your letter

2 I realized that the letter -- I realized that the time limit

3 to file additional submission in quotation has expired.  I'm

4 writing to inquire about whether or not I can obtain a time

11:08:26AM 5 extension to submit additional information to Judge Kaye.

6          Sincerely yours, I signed it and copy.

7          In response to that letter a deputy clerk out of

8 the Court of Appeals sent me a letter dated August 28th, 2006.

9 I like to put this --

11:08:58AM 10          **THE COURT:** Mark this Plaintiff's Exhibit 22.

11          **THE CLERK:** Plaintiff's Exhibit 22 has been marked.

12          **MR. BENITEZ:**  Judge, my only exception to this

13 exhibit would be for incompleteness, it references a copy of a

14 certificate denying leave is enclosed.  I do have a copy of

11:09:50AM 15 the enclosure if he would like to have the complete exhibit.

16 I would have no objection to the complete exhibit.

17          **THE COURT:** Pass it back up.  Have you seen this?

18          **MR. LIVINGSTON:**  I was going to submit a copy of

19 that.

11:10:19AM 20          **THE COURT:** Let's submit it together then, all

21 right?  So 22 will be received, which is a letter dated

22 August 28th, and also a certificate denying.  So it will be a

23 two-page exhibit.

24          (**WHEREUPON**, Plaintiff Exhibit 22 was received into

11:10:42AM 25 evidence).

1          **MR. LIVINGSTON:**  I received a response to that --

2    to that letter I wrote, that August 21st, 2006 letter I wrote

3    to the clerk office from Marjorie S. McCoy I think it is,

4    deputy clerk.  It got -- it's officially got the seal of the

11:11:24AM 5    court and it got Clerk's Office and Appellate New York address

6    and all of that.

7               And it's dated August 28th, 2006.

8               And it got my name, number, Elmira Correctional

9    Facility address, re: It says People vs. Detroy Livingston.

11:11:50AM 10   It says Dear Mr. Livingston: This acknowledges receipt of your

11   letter dated August 21st, 2006 requesting an extension of time

12   to file additional submission.

13              On August 17th, 2006, Chief Judge Judith S. Kaye

14   denied leave to appeal in the above entitled matter.  A copy

11:12:18AM 15   of the certificate denying leave is enclosed.

16              Very truly yours, Marjorie S. McCoy signed it.

17              Now, I like to make a point now.  That letter

18   that's been disputed all morning since this trial started

19   yesterday and all that, that they keep a current -- that

11:12:47AM 20   August 17th, 2006, that's the current date.  That's what

21   alerted me that something afoul went -- happened to that

22   letter and the reason why, if you remember, that letter was

23   stamped on it August 17th, 2006.

24              That's the same date that Judge Kaye denied my

11:13:19AM 25   application.  So it's like coincidence or if you want to call

1   it coincidence, I don't know what you call that.

2          But that's -- that's the three weeks from the date

3   that they wanted a submission.  I figured the three weeks

4   would have ended on August 16th.  And since the Court didn't

11:13:50AM 5   receive my submission, the next day the judge say, well, you

6   not submitting what we asked for, so only thing left is to

7   deny it because we can't -- they can't really look into the

8   matter as I state it in my application to her.

9          So she denied it on the next day on August 17th.  I

11:14:17AM 10  don't know -- and I don't know what happened, how the date is

11  similar, but I think it's a connection there to those similar

12  dates.

13          Because on the same August 17th, 2006, they held

14  the letter from me for three weeks knowing that I had three

11:14:47AM 15  weeks to submit these documents to the Court.

16          They saying they didn't hold it, but the evidence

17  showed that they held it, delayed it, even there's been

18  testimony that the letter was delayed.  Two people said it was

19  delayed.

11:15:07AM 20          **MR. BENITEZ:**  Objection, Your Honor, that's

21  misrepresentation of the facts.

22          **THE COURT:**  Yes, sustained, that will be stricken.

23          **MR. LIVINGSTON:**  If I'm not mistaken, defendant

24  Bills said it was delayed.

11:15:23AM 25          **MR. BENITEZ:**  Objection.  Same --

1           **THE COURT:** Sustained.  That will be stricken.

2     Ladies and gentlemen, it's going to be up to you to determine

3     what the facts are based upon what you determine to be the

4     credible testimony.

11:15:33AM 5           You may proceed.

6           **MR. LIVINGSTON:**  And if I had gotten that letter at

7     the prescribed time that it was mailed, which should have been

8     like three to four days, my other -- the letter from Judith

9     Kaye, Judge Judith Kaye -- is this in evidence, 6?  May I see

11:16:10AM 10    it?

11           **THE COURT:** Exhibit 6 is received?

12           **THE CLERK:** Mm-hmm.

13           **THE COURT:**  That's an envelope?

14           **MR. LIVINGSTON:**  Yes.  May I see it, please?  I

11:16:24AM 15    think it's over there.  Do you want me to get it?

16           **THE CLERK:** I can.

17           **MR. LIVINGSTON:**  The letter from Judge Kaye's

18    chambers, it was Bowes stamp, the Pitney Bowes stamp on

19    August 24th, 2006.  And then the New York State -- I mean the

11:17:12AM 20    United State Post Office for some reason post another stamp

21    over that Bowes for August 25th.  I guess that's the date they

22    received it.

23           So it was postmarked on August 25th and it got to

24    Elmira, according to the stamp on it, three days later.  And

11:17:34AM 25    that came from New York City.

1        So the one -- the July 26th one, it took 22 days to

2   come from Albany.  And that's like three weeks from the day it

3   was Bowes stamped or Pitney Bowes stamped.

4        So why it took that long?  So it had to been a

11:18:01AM 5   delay. It was a delay.

6        I was denied access to court because of that delay.

7   I couldn't get the paperwork that the Court needed to review

8   the merit of my argument.  So I was denied access to the court

9   in that way.

11:18:40AM 10        That's it.

11        **THE COURT:** Okay.  Thank you.  Mr. Benitez?

12                  **CROSS-EXAMINATION**

13  **BY MR. BENITEZ:**

14  Q.   Mr. Livingston --

11:19:04AM 15  A.   Yes.

16  Q.   -- besides this particular application to the court for

17  leave, for permission to file the appeal to the Court of

18  Appeals, besides that one, did you ever file any other appeals

19  regarding your underlying conviction?

11:19:20AM 20  A.   Did many.

21  Q.   And, in fact, you did many toward -- in the state and

22  federal courts; is that correct?

23  A.   I did one in the federal courts.  I did other error coram

24  nobis in the state.

11:19:35AM 25  Q.   And what were the results of those appeals?

1  A.    Those appeals was denied.

2  Q.    And, in fact, is it true that the federal court dismissed

3  your appeal based upon your argument of an ineffective

4  counsel; is that correct?

11:20:04AM 5  A.    I don't remember.  It was -- I think I put plenty things

6  in there, couple arguments in there.

7  Q.    And that was one of the arguments?

8  A.    I don't remember.

9  Q.    Okay. You don't remember?

11:20:20AM 10  A.    No.

11  Q.    Okay. Do you remember receiving responding papers from the

12  District Attorney's Office on that case, the federal case?

13  A.    On the federal case, the *habeas corpus*?

14  Q.    Yes.

11:21:07AM 15  A.    Yes.

16  Q.    Okay. And do you remember the argument presented by the

17  district attorney stating that the District Court found your

18  claim of ineffective counsel to be meritless?

19  A.    I don't remember.

11:21:26AM 20  Q.    Okay. That doesn't refresh your memory?

21  A.    No.  That was -- that was when?  When did I file that?  In

22  the nineties?

23  Q.    I want to just show you an Exhibit for identification

24  purposes, only for the purpose of refreshing your memory if it

11:21:51AM 25  does.  I'm going to have this marked first.

1            **THE COURT:** 408?

2            **MR. BENITEZ:** Yes, Judge.

3            **THE CLERK:** Defendants' Exhibit No. 408 is marked.

4    BY MR. BENITEZ:

11:22:37AM 5    Q.   Mr. Livingston, I've just handed to you what's been marked

6    as Defendants' Exhibit 408 for identification purposes.  Could

7    you take a moment to review that?

8    A.   Yeah, but this is not the federal *habeas corpus* response

9    you speaking about.  This is response from -- from the court

11:22:54AM 10    about this issue that I filed with the Second Circuit, the

11    writ of error coram nobis.

12    Q.   Okay. Okay.  Well, if you review that, I would like to

13    know if that -- that would refresh your memory about the U.S.

14    District Court's decision regarding your claim of ineffective

11:23:13AM 15    counsel?  Take -- go through the pages, please?

16    A.   Is there a specific paragraph you want me to --

17    Q.   Yes.  Let me approach.

18    A.   That might be it right there.

19    Q.   19.

11:25:04AM 20    A.   Yeah, I see that, mm-hmm.

21    Q.   Does that refresh your memory as to the court's decision

22    on your claim of ineffective counsel?

23    A.   Yes.

24    Q.   Okay. And how does it refresh your memory?

11:25:15AM 25    A.   I guess I put in a pro se supplemental brief telling them

1   that I was ineffective -- counsel was ineffective at trial, at

2   my trial.

3   Q.   Okay. Does it reflect -- do you remember or does it

4   refresh your memory as to the United States District Court's

11:25:37AM 5   decision finding that your claim of ineffective counsel was

6   meritless?

7   A.   That's what it says right here, yeah.

8   Q.   I'm not asking what it states there.  I'm asking if it

9   refreshes your own independent recollection?

11:25:50AM 10   A.   No.

11   Q.   Thank you.

12          **MR. BENITEZ:**  Judge, I have nothing further.

13          **THE COURT:** Anything further?

14          **MR. LIVINGSTON:**  Yes.

11:26:15AM 15              **REDIRECT EXAMINATION**

16          **MR. LIVINGSTON:**  I've been trying to fight this for

17   28 years, tell everybody that I can -- that I don't know what

18   happened during this crime, I wasn't there and I'm innocent.

19   I was railroaded, telling everybody that I can.

11:26:33AM 20          And when I filed this writ of error coram nobis,

21   this the first time in all my years of litigating my stuff

22   that the court sent a letter saying they want additional

23   submission.  No, no other time did they ever send a letter and

24   say send the papers.  So I knew after receiving that letter

11:26:59AM 25   saying sending more papers, I knew this issue was strong right

1    here because all my -- I got 28 years, almost 28 years, none

2    of the court ever said send other papers.

3              So I knew this was a strong issue right here.  And

4    I was gonna go home if I had opportunity to send these papers.

11:27:21AM 5          And by not getting this letter, messed up even

6    further my whole life by not getting this paper so I could

7    have send the court these papers.

8              So I did -- did numerous, I did error coram nobis

9    before telling them that they violated my right by not giving

11:27:52AM 10   me a better lawyer.

11             During my direct appeal a lady named Cynthia Finn,

12   she was the first lawyer they gave me and she did a excellent

13   job.  She filed two issues, they were strong, very strong.  It

14   was -- I was trying to remember what the issues are.

11:28:23AM 15        May I see it again, that paper?

16             **THE COURT:** What are you looking for?

17             **MR. LIVINGSTON:**  The --

18             **MR. BENITEZ:**  It's not in evidence.

19             **MR. LIVINGSTON:**  Okay, it's not in evidence.  I'll

11:28:34AM 20  leave it like that.  I can remember it, I can remember it.

21             The issue was the evidence was inefficient to

22   convict, that was one of the issues, she only put two issues

23   in.  The other issue was pre-indictment delay was wrongfully

24   denied because they took three and a half years to even bring

11:29:05AM 25  me to court.  They knew where I was, I wasn't on the run, they

 1   wasn't looking for me.  And some person said my name in the

 2   crime.

 3           And in three and a half years, they never arrested

 4   me, they didn't even come ask me questions, nothing.  So

11:29:29AM 5   Ms. Finn, Miss Cynthia Finn, she put that in the brief and

 6   that was on direct appeal.

 7           I also submitted a supplemental brief telling them

 8   at that time I didn't know how to do law like I do now.  I

 9   still don't know how to do law, but at that time I was like

11:29:49AM10   clueless and I put some things in.  I put in the ineffective

11   assistance of counsel, I wrote that, the lawyer didn't do

12   that.

13           So it was like jumbled in.  I think I put in that I

14   didn't get the proper amount of peremptory challenges.  You

11:30:18AM15   all just went through that, it was like challenging the jurors

16   who you wanted to put on the jury.  And during criminal trials

17   you have certain amount of peremptory challenge.  I can say I

18   don't know, that I don't want that, I don't want that person

19   and they gone.  And that was my argument, one of them.

11:30:37AM20           And then I also put in another argument that I

21   didn't get my Sixth Amendment right to confront the witnesses

22   against me.  That was a good argument, but I didn't know how

23   to argue it.  I just put my co-defendant said he was going to

24   testify against me, but then the lawyer and the judge and the

11:31:10AM25   district attorney told the jurors, yeah, this guy's going to

1  testify against him and corroborate what this person is

2  saying.

3        That never happened.  He never got on the stand and

4  did nothing.  He testified to nothing.  He didn't lie or

11:31:24AM 5  nothing.  He just plain didn't testify.  And nobody came and

6  told them, yo, the reason he's not testifying is 'cuz we found

7  out he lied or nothing.  Nothing, no correction, they just

8  left it like that, so I wrote it up as that saying my right

9  was denied, my right to confront my witness was denied.

11:31:48AM 10        But like I said, I didn't know how to do it then,

11  write the law up and things.  So I just jumbled it together

12  with the other one and so they, you know, they dismissed it.

13        So when -- when Ms. Finn, after Ms. Finn, Cynthia

14  Finn did her brief and put those two arguments in, for some

11:32:20AM 15  reason I don't know what happened, she was off the case.  It

16  was a mystery to me, too, they appointed this dude from

17  another office named Kevin Casey I think his name is, and when

18  he came aboard he didn't put his own brief in, that's like

19  legal arguments, it's called a brief.

11:32:46AM 20        And he didn't put his own brief in so he -- I guess

21  he argued in front of the Appellate Division what she had

22  briefed.  I don't know.  But later I found out that he didn't

23  because when the Appellate Division denied those issue, he put

24  in a leave application to, you know, Court of Appeals.

11:33:15AM 25        And in this leave application he totally

1  disregarded that insufficient of evidence convict issue.  He

2  didn't even put that.  He just left that out clearly.  But --

3  and he changed the other issue from the pre-indictment three

4  years, three and a half years delay, he changed that whole

11:33:40AM 5  issue around to a speedy trial and that wasn't the argument

6  she put in there.  A speedy trial and three years and a half

7  delay is totally difference from speedy trial.

8           So the judges, they was like this wasn't argued in

9  the lower court.  And that's one of they criteria to dismiss

11:34:06AM 10  your appeal if the lower court don't have notice of it, those

11  issue, they totally disregard it and they got a name for it,

12  procedural bar, and that's what the federal *habeas corpus* that

13  he's brought up just now, when I brought it -- I did that

14  pro se because you don't have a right to do that so, you know,

11:34:33AM 15  you're not -- you won't be given lawyers.  So either you pay

16  for a lawyer or you try to get one or you do it yourself.  So

17  I did that myself and I placed the issue that Ms. Finn,

18  Cynthia Finn, had placed in her thing, in her brief and submit

19  and the little things I knew submitted that, including the

11:34:56AM 20  ineffective assistance of counsel that he spoke about, I put

21  that in the federal *habeas corpus*.

22           And tell them I need, you know, this what happened

23  and they wrote me back and said these are procedural bar.  If

24  you look at it, it's not in evidence, but if you look at that

11:35:14AM 25  exhibit it will say it right there, it was procedural bar

1   because, again --

2          **MR. BENITEZ:**  Objection, Your Honor, that's a

3   misstatement of the facts.

4          **THE COURT:** If you would like that into evidence,

11:35:24AM 5   I'll be more than happy to move it in.

6          **MR. LIVINGSTON:**  Yes, I don't have no --

7          **THE COURT:** What exhibit is that?  408?

8          **MR. BENITEZ:**  Yes, it's Defendants' Exhibit 408.

9          **THE COURT:** What is it?

11:35:35AM 10          **MR. BENITEZ:**  Affirmation in opposition to writ of

11   error coram nobis and this is what was presented by an

12   attorney, Assistant District Attorney out of Kings County and

13   in there it lays out procedural and factual background.

14          **THE COURT:** Thank you.  408 will be received.

11:35:57AM 15          (**WHEREUPON**, Defendants' Exhibit 408 was received

16   into evidence).

17          **MR. LIVINGSTON:**  May I see it now?

18          **THE COURT:** Yes.  You've seen it before?

19          **MR. LIVINGSTON:**  Yeah, I've seen it.  Let me take a

11:36:11AM 20   minute to look at this, the part that I want.

21          All right, on page 6, paragraph 18, it says by

22   order date of August 23rd, 1995, the District Court denied

23   defendant's *habeas corpus* petition on the grounds that several

24   of his claims were procedural bar.  That's why they deny it

11:36:55AM 25   because it was procedural bar from *habeas corpus* review.

1          And his ineffective assistance counsel claim is --

2    claims were meritless.  So I didn't misstate.  It says it

3    right there, it was procedural bar.

4          **MR. BENITEZ:**  Objection, Your Honor.  The statement

11:37:15AM 5    is two parts.

6          **THE COURT:** Overruled.  The document's in evidence,

7    the jury can consider that at the appropriate time.

8          **MR. LIVINGSTON:**  Yeah.  I didn't -- that

9    *habeas corpus* right there, I didn't get to appeal it.  It's

11:37:36AM 10   another step to appeal, you know, the District Court decision.

11   You could take it to the Second Circuit, that's like the

12   highest federal court in New York, the Eastern District.  It's

13   in Brooklyn, I think, or Manhattan -- no, it's in Manhattan.

14         So I didn't get to appeal that because ironically I

11:38:04AM 15   didn't get that letter soon enough, so I didn't get to appeal

16   that, but they probably would have said the same thing because

17   those issues wasn't given to the lower court because, like I

18   said, when Kevin Casey came aboard he didn't submit Mrs. Finn

19   brief like she had laid it out.

11:38:32AM 20         Oh, yeah, and I did a error coram nobis regarding

21   that issue, too, because I said Kevin Casey was ineffective,

22   he's the ineffective appellate counsel because when he receive

23   Ms. Finn brief, it was no reason for him to disregard what she

24   had wrote in there.  It was no reason for him to not submit

11:39:05AM 25   ineffective, insufficient evidence to convict argument, and it

1 was no reason for him to change the pretrial delay, the three

2 and a half years, three and a half year pretrial delay to a

3 speedy trial.  It was no reason.  So I submitted error coram

4 nobis in that.

11:39:30AM 5        But what's difference from that error coram nobis

6 and the one that -- that's important to this case right here

7 is in that case the court didn't send me a letter telling me

8 to send them the other papers like in this case.

9        In this case, they sent me that letter so they

11:39:56AM 10 wanted to see what I was talking about, they wanted, they

11 wanted these 200 pages so they could see what I was talking

12 about.

13        And they, I guess they didn't get the gist of it,

14 the full gist of it in this, in this 13 pages.  They wanted to

11:40:14AM 15 see the whole thing.

16        And then when I didn't send it to them, they just

17 dismissed my case, like they rule book says they would.

18        Basically that's it.

19        **THE COURT:** Thank you.

11:40:33AM 20        **MR. BENITEZ:**  Nothing further, Your Honor.

21        **THE COURT:** Thank you, you may step down.  Thank

22 you.

23        (**WHEREUPON**, the witness was excused).

24        **THE COURT:** Ladies and gentlemen, at this time we're

11:40:41AM 25 going to take a recess.  I'm asking you not to discuss the

1    matter or allow anybody to discuss the matter with you.  The

2    jury may step down, we'll stand in recess.

3             (**WHEREUPON**, the jury was excused).

4           **THE COURT:** A court security officer or one of the

11:41:26AM 5    guards, can you approach side bar for a second?  This does not

6    need to be on the record.

7             (**WHEREUPON**, there was a discussion off the record.)

8          **THE COURT:** Mr. Livingston, are you going to rest at

9    this point?

11:42:50AM 10          **MR. LIVINGSTON:**  Yes, sir.

11          **THE COURT:** Okay.

12          **MR. LIVINGSTON:**  May I say one thing?

13          **THE COURT:** Sure.

14          **MR. LIVINGSTON:** You never got back to me about

11:43:01AM 15    Ms. Daugherty.

16          **THE COURT:** What do you need her for?

17          **MR. LIVINGSTON:**  To verify certain thing like, you

18    know, because she send me letters that used the -- that Pitney

19    Bowes thing and also -- yeah, she sent me letters at that time

11:43:18AM 20    that -- that's relevant to the issue.  And the directive

21    states certain things supposed to happen when you out to

22    court; and also ask if what's described in the directive if

23    she received those -- those notification from -- from Elmira.

24          **THE COURT:** Were those the same directives you put

11:43:48AM 25    into evidence?

1          **MR. LIVINGSTON:**  Yes, but I'm trying to show --

2    wanted to show by her because she's actually -- she knows like

3    relevant parts of it because in the directive it says that

4    they will be notified if I'm out to court, they will be

11:44:09AM 5    notified.  And I want to ask her if she notified at any point,

6    you know, according to that that -- they directive that --

7          **THE COURT:** It sounds like that would be strictly

8    hearsay information.  I don't see how that could possibly come

9    into evidence.  Do you have any other reason to call her?

11:44:33AM 10          **MR. LIVINGSTON:**  Oh, yeah, I wanted to ask her like

11    who -- like how she get her -- how she get her notification

12    from the courts, like do they mail it by the slow mail, the

13    snail mail they call it, or e-mail it or fax it and that's

14    relevant because I want -- I want to use that to show that

11:45:08AM 15    certain parties was privy that these letters -- the July 26th

16    letter was on its way and that's why I was delayed because

17    they had further -- prior notice that it was on its way, and

18    not to release it until certain further notice.

19          **THE COURT:** Who had prior notice?

11:45:38AM 20          **MR. LIVINGSTON:**  That's -- that's what the

21    testimony will draw out, like what attorney of either the

22    opposition or the adverse party will have prior notice before

23    me, like say because I'm in prison I don't have, you know, all

24    that technology just going on now, I have to get my letters

11:46:04AM 25    through the U.S. Postal Service.

            The attorney and adversary get prior notice like
through fax, they will get it the same day it's out.  Like say
you want to send attorney a letter dated today, you will
probably -- or your secretary probably put it in the fax
machine and they will get it that day.  Me, I will probably
have to wait three or four days so --

            THE COURT: Was she representing you during this
time?

            MR. LIVINGSTON:  Yes.

            THE COURT: In 2006?

            MR. LIVINGSTON:  Yes.

            THE COURT: On this matter?

            MR. LIVINGSTON:  On this matter?

            THE COURT: Right.

            MR. LIVINGSTON:  No.

            THE COURT: What did she represent you on?

            MR. LIVINGSTON:  I think the Second Circuit and
reverse 1983 lawsuit and she happened to -- I don't know if
she -- I don't know how she was appointed, but she was
appointed by this court, I think Larimer.

            THE COURT: Are you talking about the District Court
system vs. State court system?  District Court has electronic
filing.  Different story than the State system, which does
not.

            MR. LIVINGSTON:  Does not what?

1          **THE COURT:** Have electronic filing.  New York State

2    court system does not have electronic filing.

3          **MR. LIVINGSTON:**  Electronic filing.  Oh, so they --

4    so the attorney will get notice on the same day with me?

11:47:29AM 5          **THE COURT:** A letter?

6          **MR. LIVINGSTON:**  A letter.

7          **THE COURT:** That's right.

8          **MR. LIVINGSTON:**  Okay, that was the issue right

9    there to see if it is different.

11:47:36AM 10          **THE COURT:** Anything else?

11          **MR. LIVINGSTON:**  Regarding her?  Or any -- no.

12          **THE COURT:** Okay.  All right.  Okay, we'll take a

13    recess.

14          **MR. BENITEZ:**  Okay.  Judge, upon the return from

11:48:03AM 15    recess can I make my motion Rule 50(a) motion?

16          **THE COURT:** Yeah, Rule 50?

17          **MR. BENITEZ:**  Yes, Rule 50.  Thank you, Judge.

18          **THE COURT:** Okay.

19          (**WHEREUPON**, there was a pause in the proceeding.)

12:02:13PM 20          **THE COURT:** Plaintiff has rested.  Mr. Benitez, you

21    have a motion?

22          **MR. BENITEZ:**  Yes, I do, Judge.  On behalf of

23    defendants Bills, Ms. Whitten and Gates, Ms. Gates, pardon me,

24    I respectfully move pursuant to Federal Rules of Civil

12:06:05PM 25    Procedure Rule 50 for judgment as a matter of law on three

1  independent and separate bases.

2          One, is the fact that plaintiff has failed to prove

3  through any credible evidence, let alone any evidence, that

4  there was any personal involvement by any of these three

12:06:25PM 5  supervisory level employees.  As the evidence showed,

6  Mr. Bills at the time was a senior counselor who has held that

7  position and had a supervisory position over in the mail room.

8          Likewise, Ms. Gates was a senior law clerk who held

9  a supervisory position over other law clerks in the office.

12:06:48PM 10          **THE COURT:** You mean mail clerks?

11          **MR. BENITEZ:**  Other mail clerks, excuse me.  She

12  was a senior mail clerk, excuse me.  I misspoke.

13          And, lastly, Ms. Whitten was the deputy

14  superintendent for programs at the facility who supervised all

12:07:03PM 15  programs at the facility.  Specifically, in 1983 cases

16  personal involvement is required of the defendant in an

17  alleged constitutional deprivation.  It's a prerequisite

18  that's cited at *Rossi vs. Stevens*, that's 2005 U.S. District

19  Lexis 47198.  It's a Southern District case, 2005, and it's

12:07:41PM 20  citing a Second Circuit *Williams vs. Smith*, 781 Federal

21  Circuit 319.

22          Second basis, Your Honor, is lack of sufficient

23  evidence, lack of any evidence and proof to substantiate any

24  of the elements of the denial of prisoner's right to access to

12:08:07PM 25  court.

1          Specifically, the first element has been supported

2    as recent as by the Western District of New York

3    September 12th, 2013, *Myers vs. Dolac, that's 2013 U.S.*

4    *District Lexis 130677, citing Cancel vs. Goord.*  In that

12:08:36PM 5    particular case it was cited, it states, in relevant portion,

6    that in order to survive a motion to dismiss and here we're at

7    the stage of all the proof being presented to the Court, a

8    plaintiff must allege not only the defendant's alleged conduct

9    was deliberate and malicious, but also that the defendant's

12:08:57PM 10    actions resulted in actual injury to the plaintiff such as the

11    dismissal of an otherwise meritorious claim.

12          Here the plaintiff and the proof utterly fails to

13    show that any of the three defendants were -- he hasn't been

14    able to impute any conduct of any of these three, let alone

12:09:19PM 15    their conduct was either intentional, malicious or deliberate

16    against him.

17          The evidence and the testimony by Ms. Gates was

18    that to her -- the best of her knowledge, she did not handle

19    his mail, the mail in question, which is the letter from the

12:09:35PM 20    New York State Court of Appeals.  She had -- at no time had

21    involvement in the handling of that mail.

22          And as to the other two defendants, they were

23    never -- they never handled any of the mail for any inmate,

24    let alone Mr. Livingston.

12:09:53PM 25          Second element that -- that the plaintiff failed to

1  show is that -- that any of my clients' conduct, again,

2  there's no wrong conduct alleged by any of these three

3  defendants by the facts.

4            He's tried to impute conduct on a facility or on a

12:10:20PM 5  state entity.  This is an individual -- these are individual

6  claims.  And if you look at the individual claims against any

7  of these three individuals, there is no conduct that any of

8  these three did that hindered his efforts to pursue a

9  meritorious legal claim.

12:10:40PM 10            On that part as well the issue of meritorious legal

11  claim, the plaintiff's exhibit on that point there,

12  Plaintiff's Exhibit 22, is a certificate denying leave, which

13  is the permission to file an appeal.  In that certificate, the

14  Court, Chief Judge Kaye, states in pertinent part that upon

12:11:08PM 15  the record and proceedings herein, there is no question of law

16  presented which ought to be reviewed by the Court of Appeals

17  and permission to appeal is hereby denied.

18            So it was after deliberating and upon the record in

19  the proceedings therein that the Court held that there was no

12:11:29PM 20  question of law.

21            It was never a statement by the judge stating that

22  it was a violation of a particular court rule, nor does the

23  Court state, as the plaintiff had suggested in his testimony,

24  nor that -- nor that it was based upon a delay in mail.

12:11:56PM 25            It was based on the merits and there was no

1 question of law presented.

2      At no time, I should point out, did any of my

3 clients -- were they aware of the contents of his legal mail.

4 There's no proof in the record to establish that at all.

12:12:20PM 5      Now, the fourth element would be the fact that the

6 plaintiff was bringing a claim that was not frivolous. Well,

7 frivolous and meritorious have been interchangeably used by

8 the courts. Basically, it's one that -- that the -- in that

9 case -- legal claim, that would be the D.A. would have

12:12:46PM 10 provided him with some type of relief or enter some type of

11 plea with him. At no time is there any record suggesting that

12 in this case, Judge.

13      And, lastly, the harm done to the plaintiff, none

14 of the conduct by my clients any of -- none of their conduct

12:13:04PM 15 caused him harm. Their conduct individually. That's my

16 point. Whether there's a issue of a fact about his mail being

17 delayed or not, I know -- we know for a fact by the proof in

18 the record before the Court that none of that was done by any

19 of these individual clients.

12:13:25PM 20      Based on that he fails to meet any of these

21 elements by a preponderance of the evidence. That's the

22 second point, Judge.

23      The third and final basis for my motion for

24 judgment is that no -- that no reasonable public officer in my

12:13:50PM 25 clients' positions would have thought that their conduct or

1  omissions would have been a constitutional violation of

2  Mr. Livingston's rights.

3          There hasn't been -- there's just no proof other

4  than the mere fact that these three individuals held a

12:14:19PM 5  supervisory position at the facility, none had personal

6  involvement, none of them actually did the conduct that he's

7  alleging to have occurred, which is actually pretty unclear

8  other than in a conclusory speculative way he states that his

9  mail was withheld.

12:14:39PM 10         Well, even so, he hasn't proven that these folks,

11  any of my clients did just that.  Therefore, I respectfully

12  request judgment as a matter of law as to these three

13  individuals.  Thank you, Judge.

14          **THE COURT:** Thank you.  Mr. Livingston?

12:14:59PM 15         **MR. LIVINGSTON:**  Yes.  I didn't expect them to get

16  on the stand and say yes, we did it and I don't think anybody

17  here expected them to say we did it, but the evidence showed

18  that mail from the court was denied, was delayed for extended

19  period of time and because of that delay that I couldn't

12:15:28PM 20  respond to what the court wanted.

21          Numerous directives that they -- that they suppose

22  to be they policies and procedures states that the supervisory

23  is responsible for anything that goes wrong and in the mail

24  room.

12:15:50PM 25         And -- and the evidence shows that that letter of

1   July 6th was not given to me until three weeks after the

2   deadline.  I don't know how they know when the deadline was,

3   but they gave it to me three weeks after, exactly after.

4          And the evidence, the preponderance of the evidence

12:16:27PM 5   showed that I was denied access to the courts.  And numerous

6   cases that states that when a prisoner claims that he was

7   injured by prison officials in efforts to defend or pursue

8   other relevant legal claims, then he was denied access to the

9   court.

12:17:04PM 10   And I was -- I was obviously prevented from showing

11   or submitting and submitting the evidence that the Court

12   requested and according to they -- according to that specific

13   court ruled, it said that's a dismissal of the petition would

14   occur if these documents are not submitted per they rules.

12:17:39PM 15          Because of the delay of the -- that letter, the

16   July 26th letter, that's exactly what happened.  When

17   Ms. Kaye -- what she wrote in her decision, the reason to me

18   why she said that because she couldn't identify what I was

19   talking about because these documents was missing.

12:18:02PM 20          And she needed the document to substantiate the

21   law, the question of law I was stating and submitted in my

22   leave application.

23          And the leave application is -- is meritorious --

24   it had merit because it was seeking to overturn a decision

12:18:38PM 25   from the lower courts from the Appellate Division.

1          And the judge couldn't do that without the initial

2    submissions.  And these defendants are responsible.  Can you

3    see they were the supervisors, they might have actually

4    handled the thing, the letter, and nobody expected them to get

12:19:07PM 5    on the stand and say we did it, you know, given the money and

6    all that.

7          I think Your Honor should deny the motion and let

8    the jury decide.

9          **THE COURT:** Thank you very much.  Regarding this

12:19:25PM 10   matter, the plaintiff alleges that he was denied his access to

11   the courts in violation of the United States Constitution.

12         In order to prove his claim he must prove certain

13   elements by a preponderance of the evidence including, first

14   of all, that he was denied access to the courts.  In this

12:19:45PM 15   case, by the intentional holding back of certain legal mail.

16         And, secondly, that the acts were done by the

17   defendants under color of law.

18         Third, that the defendants' conduct hindered

19   plaintiff's efforts to pursue a meritorious legal claim.

12:20:08PM 20        Fourth, that the case which the plaintiff wanted to

21   bring to court was not frivolous.

22         And five, that the plaintiff was, in fact, harmed

23   by the defendants' conduct.

24         The defendants Gates, Bills and Whitten all

12:20:27PM 25   testified, called by the plaintiff in this particular case.

1  Regarding the defendant Whitten, there's no evidence that she

2  had any involvement whatsoever in the handling of any mail,

3  let alone the plaintiff's mail in this particular case.

4              There needs to be proof of intentional acts, there

12:20:51PM 5  is no testimony that she in any way had any policy or

6  procedures that intentionally deprived the defendant of his

7  right to receive his legal mail in a timely fashion.

8              And, therefore, the Court does grant the judgment

9  as a matter of law regarding the defendant Whitten and

12:21:10PM 10  dismisses the cause of action against her.

11             Regarding the defendant Bills, the same situation

12  exists.  He was acting as a supervisor overseeing the mail

13  room, but there's no testimony he had any permanent

14  involvement or in any way acted in an intentional manner to

12:21:29PM 15  deprive the defendant of his access to courts by denying him

16  proper timely receipt of his legal mail.

17             And, therefore, the Court finds that the jury

18  cannot find against the defendant Bills, and the Court will

19  grant the judgment as a matter of law regarding the defendant

12:21:47PM 20  Bills and dismiss that matter as well.

21             The remaining defendant Renee Gates indicated she

22  was a supervisor in the mail room, but did indicate on

23  occasions that she did handle mail, did not recall

24  specifically whether or not she could or might have handled

12:22:06PM 25  Mr. Livingston's mail, particularly the mail that's the

1   subject of this particular litigation.

2          I think the testimony is sufficient for the jury to

3   determine whether or not there was a -- clearly a delay in

4   this particular mail.  There's proof that it was postmarked

12:22:28PM 5   through a Pitney Bowes postmark from July 26th, was ultimately

6   received by Mr. Livingston on August 17th, although it

7   indicates received on August 17th, I think the testimony

8   raises several issues regarding that.

9          In particular, what happens with mail when someone

12:22:52PM 10  is out to court?  This particular envelope was marked OTC,

11  later crossed off and appeared that then a cell location of

12  the defendant was placed on that particular envelope.

13         There was testimony I think from Ms. Gates as well

14  that indicated that the procedure was to put on a stamp as

12:23:14PM 15  soon as it's received, but not that that was always done or

16  there could be times where that had not been done.

17         Therefore, I believe there's issues of fact for the

18  jury regarding the involvement of Ms. Gates in this matter and

19  deny the motion under Rule 50 for a judgment as a matter of

12:23:34PM 20  law regarding the defendant Renee Gates, but the other two

21  defendants will be dismissed.

22         Are you going to present any evidence?

23         **MR. BENITEZ:**  No, I'm not, Judge.

24         **THE COURT:** Are you both prepared to do closing

12:23:56PM 25  statements then?  Advise you of the charge?

1          **MR. LIVINGSTON:**  I'd like to make a motion to move

2    for directed verdict on the issue.

3                **THE COURT:** Directed verdict?

4                **MR. LIVINGSTON:**  Yeah, directed verdict -- a

12:24:17PM 5    direct -- let me see -- directed verdict judgment

6    notwithstanding the verdict after trial.

7                **THE COURT:** It's not the time to make that motion?

8                **MR. LIVINGSTON:**  Excuse me?

9                **THE COURT:**  It's not the appropriate time to make

12:24:35PM10   that motion.

11               **MR. LIVINGSTON:**  I thought after that's the time to

12   do it when all evidence is --

13               **THE COURT:** What rule are you referring to?

14               **MR. LIVINGSTON:**  I don't know the rule, but --

12:24:47PM15               **THE COURT:** What are you reading from?

16               **MR. LIVINGSTON:**  I'm reading from a trial

17   techniques book.  It says after evidence is closed, permit

18   motion for directed --

19               **THE COURT:** You're alleging there's no issue of fact

12:25:11PM20   and the Court should direct the verdict in your favor?

21               **MR. LIVINGSTON:**  Yes.

22               **THE COURT:** Okay, denied.  Anything else?

23               **MR. LIVINGSTON:**  No.

24               **THE COURT:** There are clearly issues of fact for the

12:25:21PM25   jury to decide in this matter.

1      **MR. LIVINGSTON:** Okay.

2      **THE COURT:** Okay. So you'll be ready for summation.

3  I'm going to go through the jury charge at this time.

4      I will not charge the jury until tomorrow morning,

12:25:32PM 5  but we'll take a short break, then we'll do summations.

6      The Court will instruct the jury on province of the

7  jury and the Court.

8      Indicate that the evidence in the case consists of

9  the sworn testimony of witnesses, any exhibits received in

12:26:01PM 10  evidence and we'll review those exhibits prior to them being

11  submitted to the jury.

12      Any statements and arguments of counsel are not

13  evidence.

14      If there's an objection to a question sustained by

12:26:14PM 15  the Court, they're to disregard that question.

16      They're to consider only the evidence in the case.

17      I'll explain to them the difference between direct

18  and circumstantial evidence.

19      I'll indicate to them the questions are not

12:26:32PM 20  evidence in and of themselves.

21      That their recollection does control.

22      In this case I did ask witnesses questions, I did

23  so only to enlighten the jury regarding particular issues and

24  they should not view that as giving any indication I have any

12:26:53PM 25  opinion on a fact issue which is solely within their

1 determination.

2           I made rulings on objections and motions during the
3 course of the trial.  Again, that was based solely on the law.
4 That should cause them to make no inference that I have any
12:27:10PM 5 opinion regarding the credibility of the testimony.

6           I'll instruct the jury, too, that the burden of
7 proof in this case is that the plaintiff must prove the case
8 by a preponderance of the evidence.  I will define for the
9 jury preponderance of the evidence.

12:27:32PM 10           I'll instruct them that it will be up to them to
11 determine the credibility of the witnesses' testimony, provide
12 them various testimony which could be utilized to determine
13 the credibility of witnesses, including any inconsistencies --
14 I'm sorry, inconsistencies, any prior inconsistent statements
12:27:51PM 15 as well.

16           I'll instruct the jury that all available evidence
17 need not be produced.

18           I'll instruct the jury they can consider the
19 interest of a witness, any bias or hostility a witness may
12:28:09PM 20 have.

21           Regarding cause of action, there's one cause of
22 action, specifically denial of a prisoner's access to courts.

23           The Court will indicate that the acts of the
24 defendant, the only remaining defendant, Renee Gates,
12:28:33PM 25 particular rights under the Constitution of the United States.

1    The plaintiff alleged that he was deprived of his
2 rights under the First Amendment of access to the courts.
3    To succeed in his claim of denial of access to
4 courts, he must prove by a preponderance of the evidence the
12:28:53PM 5 following elements:
6    One, that the defendant did deprive him of access
7 to the courts by intentionally holding back his legal mail,
8 and I will define "intentionally."
9    Second, the defendant acted under color of law.
12:29:10PM 10    Third, that the defendant's conduct hindered his
11 effort to pursue a meritorious legal claim.
12    Fourth, the case which the plaintiff wanted to
13 bring to court was not frivolous.
14    And, five, the plaintiff was harmed by the
12:29:24PM 15 defendant's conduct.  If the plaintiff has proved each of
16 these elements by a preponderance of the evidence, they should
17 find for the plaintiff and consider the issue of damages.
18    On the other hand, if they find the plaintiff has
19 failed to prove any one of the elements by a preponderance of
12:29:41PM 20 the evidence, they should find for the defendant.
21    I will instruct the jury that they are to consider
22 damages.  I'll charge them on the law related to damages.
23 However, I will instruct them on the fact that my charging
24 them on the issue of damages is not to be taken as an
12:30:08PM 25 indication that they should find for the plaintiff.  They have

1   to find first that the plaintiff has proved his case by a

2   preponderance of the evidence.

3           I'll instruct the jury that their damages must be

4   reasonable.  Any damages must have been proximately caused by

12:30:25PM 5   the actions of the defendant.

6           I will instruct the jury regarding compensatory

7   damages, nominal damages.  I do not believe there's sufficient

8   evidence to instruct the jury on punitive damages and decline

9   to do so.

12:30:53PM 10           I will instruct the jury that the verdict must be

11   unanimous.

12           That they are to consider all the evidence in the

13   case, discuss the case among themselves, that their verdict

14   should not be in any way based upon the party's race,

12:31:14PM 15   religion, national origin, sex or age.

16           I will provide them with various rules they must

17   abide by during their deliberations.

18           That they can consider their notes.  If they need

19   readbacks of any testimony or law, that can be provided to

12:31:31PM 20   them.

21           If they want any of the exhibits received in

22   evidence, they can receive those.

23           The Court will appoint juror number 1 as the

24   foreperson of the jury.

12:31:43PM 25           Indicate that the foreperson if and when the jury

1 does reach a unanimous verdict, will return to court and

2 report the verdict in open court.

3          Mr. Livingston, do you have any exceptions or

4 requests?

12:32:02PM 5          **MR. LIVINGSTON:**  Yeah, I like you to give a charge

6 about not being prejudiced about the officers, you know, in

7 the courtroom.

8          **THE COURT:** The fact you're in custody?

9          **MR. LIVINGSTON:**  Yes.

12:32:16PM 10          **THE COURT:** Yes, I will do that.

11          As I raised at the side bar, I'm a little concerned

12 about one of the exhibits that you asked to be received in

13 evidence and have received which outlines your underlying

14 crime because it does involve a robbery and a murder.

12:32:49PM 15          And that's very well-articulated within that

16 document.  I think it's a writ of error coram nobis.

17          You indicate you understood that and you knew that.

18 I don't know if you want me to fashion any charge related to

19 that or not.

12:33:05PM 20          **MR. LIVINGSTON:**  Yeah.  Yeah, you know better than

21 I do, yes.  Yeah, you know, if it comes a point because they

22 gonna learn about it anyway because I might speak about it and

23 say something about it.  So it's already in the document, so I

24 might reading it, but if you have something to say about it, I

12:33:28PM 25 wouldn't mind.

1          THE COURT: Well, I will instruct -- I will come up

2     with some type of instruction and I'll prepare that and read

3     it to you before I give it to the jury.  I think they need to

4     be instructed somehow to disregard that.  I don't want that to

12:33:43PM 5     overwhelm their discussions here.  It's really not relevant.

6          Anything else?

7          MR. LIVINGSTON:  No.

8          THE COURT: Mr. Benitez?

9          MR. BENITEZ:  I note the Court mentioned they were

12:33:56PM 10     to define the term "intentional."  Just wanted to make sure,

11     is that going to be consistent with the Western District?

12          THE COURT: Consistent with what?

13          MR. BENITEZ:  I just wanted to know what the

14     definition would be.

12:34:08PM 15          THE COURT: Sure.  An act is intentional if it is

16     done voluntarily and deliberately and not because of mistake,

17     accident, negligence or other innocent reason.  Please note

18     that intent can be proved directly or can be proved by

19     reasonable inference from circumstantial evidence.

12:34:24PM 20          MR. BENITEZ:  Thank you, Judge.

21          THE COURT: Is that sufficient?

22          MR. BENITEZ:  I have no exception.

23          THE COURT: All right.  With that why don't we take

24     a five minute recess or so and then we'll come in and bring

12:34:33PM 25     the jury in, we'll do summations.

1        **MR. LIVINGSTON:**  Summation today?

2        **THE COURT:** Summations today, we do summations

3   today, we're going to recess, reconvene at 8:30 tomorrow

4   morning, I'll charge the jury then, okay?  Thank you.

12:39:57PM 5        (**WHEREUPON**, there was a pause in the proceeding.)

6        **MR. BENITEZ:**  Judge, may I have Ms. Gates sit next

7   to me at the table?

8        **THE COURT:** Sure, absolutely.

9        **MR. BENITEZ:**  Thank you.

12:40:07PM 10       **THE COURT:**  Again, I will instruct the jury that at

11  this point the only remaining defendant is the defendant Renee

12  Gates and they're not to speculate as to that, okay?  Thank

13  you.  Ready?

14       **MR. BENITEZ:**  Yes, Judge.

12:40:21PM 15       **THE COURT:** All right, bring the jury out.

16       (**WHEREUPON**, the jury is present.).

17       **THE COURT:** Members of the jury, at this time the

18  proof has been closed, you're about to hear the summation of

19  the parties.  You should know that during their submissions

12:41:54PM 20  the parties will make certain inferences and conclusions which

21  they believe may be properly drawn from the evidence.  That's

22  the purpose of the summations.

23       However, it's entirely up to you to determine the

24  evidence in the case.  You are the sole judges of the facts in

12:42:09PM 25  the matter.

1          Any statements of counsel is not evidence.  You

2    decide what the evidence is.  Just so you know for planning

3    purposes, we're going to hear the summation of counsel at this

4    time, and then we're going to recess until tomorrow morning.

12:42:21PM 5    We'll reconvene at 8:30 tomorrow morning and at that time I

6    will instruct on the rules, the law and the principles that

7    will guide your deliberations.

8          With that understanding, summation of counsel at

9    this time.

12:42:33PM 10          **MR. BENITEZ:**  Thank you, Judge.

11          **THE COURT:** Mr. Benitez.

12          Before we begin, members of the jury, at this time

13    there remains one defendant in this case.  Regarding the

14    defendant, please don't speculate as to why the other two

12:42:55PM 15    defendants have been -- are no longer part of the case.  Thank

16    you.

17          **MR. BENITEZ:**  As it may please the Court, the jury,

18    ladies and gentlemen, first I'd like to take the opportunity

19    to thank you for your time and attention in this matter.  Some

12:43:13PM 20    folks that may be -- may be questioning as to why certain

21    questions were asked or they weren't asked or why some

22    testimony was allowed and some was not allowed.

23          Rest assured, we did our best to make sure that you

24    have a picture of what this case was about.

12:43:35PM 25          What we have here today, as I stated in my opening,

        1    is quite simple: To the point, what we have here is a case

        2    that's diametrically opposed.  We have a plaintiff who is

        3    alleging a very complex conspiratorial case and from our

        4    perspective this is, as I stated in my opening, very simple

12:44:10PM  5    and straightforward.

        6            The facts and the evidence and the proof will lead

        7    you to believe and accept the credible evidence in this case,

        8    will lead you to accept the fact that Ms. Gates had no

        9    personal involvement in some constitutional violation of the

12:44:30PM 10    plaintiff in this case.

       11            We're talking about an incident that happened over

       12    nearly eight years ago, eight years ago in 2013 -- this

       13    happened back in August 17th, 2006 at Elmira Correctional

       14    Facility.

12:45:05PM 15            What we're going to talk about is a number of

       16    things.  But, most importantly, the proof and the evidence

       17    and lack thereof.

       18            What's startling to me is -- well, we have a number

       19    of things.  One of the most important things I think is that

12:45:27PM 20    what motivation would Ms. Gates have had to do what the

       21    plaintiff alleges she did?

       22            Now, what is the conduct that he's alleging?  He's

       23    alleging that there was a letter that was sent by the New York

       24    State Court of Appeals from the capital, Albany, New York to

12:45:51PM 25    Elmira Correctional Facility and that was in an envelope.

1   Remember the testimony, the credible evidence here, no one

2   knew the contents of that envelope.

3           No one did other than the person who wrote it and

4   the recipient, which would be Mr. Livingston.

12:46:15PM 5           The practice -- based upon the practice and the

6   knowledge of Ms. Gates during the time of August of 2006, was

7   very clear and it was reiterated by Mr. Bills and by

8   Ms. Whitten, it's undisputed what the process is.  Mail comes

9   in, it's filtered, there's three types of mail and the

12:46:43PM 10  priority is always given to the legal mail.

11          Legal mail is simply stamped, put in a bag, set

12  aside.  Then they deal with the rest of the mail and I'm going

13  to talk about the rest of the mail.

14          And believe me, you're going to be asked during

12:47:10PM 15  questions in the instructions and I want you to remember

16  especially what I said in my opening, the plaintiff is not

17  going to be able to meet the burden of proof for each of the

18  five elements.  I'm not going to instruct you on those

19  elements, but I want you to remember at least one point that I

12:47:29PM 20  said in my opening, which was he's not going to be able to

21  show or prove any of the elements, number one, but most

22  importantly, that Ms. Gates intentionally withheld a letter

23  from the Court of Appeals for over three weeks.

24          The testimony was very clear.  She stated when she

12:47:56PM 25  looked at the writing, what was the procedure?  They get it,

1    they put it -- they date stamp it, put it in the mail, then

2    the person, there's a mail clerk -- there's a mail clerk that

3    puts in the cell location of that inmate.  I-2-A, whatever it

4    was on the exhibit.

12:48:13PM 5          And that writing -- what was Ms. Gates' testimony

6    about that writing?  She recognized it that it was not hers,

7    it was not her writing, that the person who wrote that was the

8    one that handled his legal mail.

9          There is no personal involvement by Ms. Gates in

12:48:33PM 10   this case.  We're talking about a career professional, State

11   professional, she testified over numerous years of public

12   service.  Her first time on the stand in a federal courtroom.

13   I'm flabbergasted.

14         You know, my client here has nothing to gain,

12:49:13PM 15   nothing to gain other than to get rid of this gray cloud over

16   her that's been lingering for how many years now?  From 2006

17   to now, and hopefully vindication, and that's where I'm asking

18   each and every one of you to come back quickly with a no

19   cause.  I mean, not -- you can't find Ms. Gates liable for

12:49:40PM 20   this act, for this situation.

21         What do we know the credible evidence shows?  The

22   plaintiff he testified, he testified that he on multiple

23   occasions filed appeals regarding his underlying conviction.

24   And what was the basis of his underlying appeals?  Not that he

12:50:11PM 25   didn't do it, not even the gall to even mention that.

1          But it should be overturned why?  For procedural

2     reasons.  Procedural reasons not dealing with the substance of

3     the underlying crime of which I'm not going to get into.

4          And then the plaintiff, what does he do up on the

12:51:00PM 5     stand?  He tries to explain to you the thought process of the

6     Court of Appeals.  He wants to step into the mind of Chief

7     Judge Kaye and tell you that it was because he didn't have

8     this opportunity to submit additional evidence which was

9     optional.  It wasn't obligatory.  You can look at the letter

12:51:24PM 10    from the judge.  It was not -- first of all, he didn't have

11    the right to appeal.  He had to seek permission from the court

12    to appeal.

13         That's a discretionary function.  And the judge,

14    her decision, which he has marked in one of his exhibits, is

12:51:46PM 15    page 2, which if you recall I was the one that brought it into

16    the exhibit, and that document what does it state?  I'll pull

17    it up for you.  Excuse me.

18         This is Plaintiff's Exhibit No. 22, this is a

19    letter from the Court of Appeals dated August 28th, 2006, and

12:52:13PM 20    in there it incorporates the Court's decision and in this

21    decision the certificate denying leave, denying him the

22    permission, denying him permission to file another appeal

23    after multiple appeals.

24         Here we go.  The critical piece there, the judge

12:52:57PM 25    upon the record and proceedings herein, there is no question

1  of -- question presented which ought to -- ought to be

2  reviewed by the Court of Appeals and permission to appeal is

3  hereby denied.  Speaks for itself.

4          All right.  That's pursuant to law.  It's not

12:53:27PM 5  because your mail was delayed.  It wasn't because -- I don't

6  know, anything one could argue, I suppose.

7          It wasn't because of a violation of some court rule

8  that he was trying to state earlier.  That if you don't submit

9  these records, remember that testimony?  He was saying if you

12:53:52PM 10  don't hand in these records, then the Chief Clerk of the Court

11  will dismiss the case.

12          Guess what?  Who dismissed -- there was no

13  dismissal, number one.  There was no dismissal.  This is a

14  denial, number one.

12:54:10PM 15          A denial for him -- for him to not bring another

16  appeal as a matter of law.  That's what this issue is about.

17  It's not a dismissal, number one.  And number two, he

18  submitted a 13 page application to the Court which was typed,

19  dense, he cited the transcript, it was in-depth.  It's in

12:54:34PM 20  there somewhere, I'm not going to go into it all, feel free to

21  look at it if you like.

22          But, honestly, everything he had to say was in

23  those 13 pages of typed written letter.  Any judge is going to

24  make that determination right away.

12:54:54PM 25          Here who denied the leave?  It wasn't -- it was the

1  Chief Judge Kaye, she denied the leave.  The Court of Appeals,

2  by the way, is the highest court in New York State.

3          The plaintiff's testimony is so clear on this

4  point, he's become rather proficient about the law.  He told

12:55:36PM 5  you in his federal case, oh, yeah, you better believe it, I

6  told the judge, I told the Court I had real basis because the

7  peremptory challenges, peremptory challenges.  Remember he

8  explained to you peremptory challenges, that you get to strike

9  certain jurors off and on and off if you don't like them and

12:55:56PM 10  whatever?

11          Whoa.  That's a big basis to overturn a conviction.

12  But that's the type -- that's the reasoning that goes on

13  through this type of case, which is an absurdity.

14          What do we have here in terms of Ms. Gates?  A

12:56:16PM 15  career public servant acting in ordinary course of business

16  like you would, like anyone would in the performance of their

17  job.

18          And what does the plaintiff want from you?  To hold

19  her liable where there has been no proof that she was actually

12:56:38PM 20  the person that handled his mail, number one.

21          Let alone that she intentionally withheld his mail.

22  Quite the contrary.  All the testimony and the proof shows is

23  that letter, it was postage stamped on July 26th, 2006.  We

24  all agree.  I'm not -- that's the simple part of the case.

12:56:57PM 25          Postage stamp July 26th, 2006.

1          Pitney Bowes is a private scanner.  That's all that

2    is.  It's not from the U.S. Postal Service, no one's been able

3    to establish that.

4          No one's been able to establish it even when it

12:57:13PM 5    arrived at the U.S. Postal Service for them to process.

6          For all I know, we could all speculate, could have

7    been, you know what?  It's in the summertime, it could have

8    been a college intern working with the New York State Court of

9    Appeals, God forbid, but that may happen.  Someone forgot to

12:57:30PM 10    put it in the mail.  That's a possibility.

11          I'm not telling you that's not -- that happened.

12    But the reality is the testimony from all three of my clients

13    was they don't know.  They don't know from July 26th to

14    August 17th, they don't know what happened in that timeframe.

12:57:54PM 15          Guess what?  Neither does the plaintiff.

16          Very complicated.  But what did he testify on the

17    stand?  He testifies he wants you to believe it was more than

18    just coincidence that the Chief Judge from the Court of

19    Appeals signed that denial on August 17th, 2006, the very same

12:58:17PM 20    date that the facility received the letter and he received the

21    letter the same day both days.

22          I don't know what that really means.  He wants you

23    to kind of take a leap of faith that there was some conspiracy

24    perhaps with the Court of Appeals and Ms. Gates.  Maybe Judge

12:58:43PM 25    Kaye called Ms. Gates up and said guess what?  I want to play

1    a game on Mr. Livingston.  I mean, I hope what I'm telling you

2    is so far-fetched that no reasonable person can come here and

3    say that Ms. Gates did anything unconstitutional, anything

4    wrong.

12:59:08PM 5          If there was anything wrong, it was the fact that

6    something happened with that mail.  We don't know.  But if

7    there's anything wrong, it's the fact that we're here.  That

8    we're here.  My client has nothing more to prove in this case.

9          If she didn't do something wrong, how do you prove

12:59:29PM 10   a negative?  I can't come here and tell you -- I showed you

11   all the records, it's simple from our perspective.  It arrived

12   on August 17 and it was given to him on August 17.  That's it.

13         That's our defense.  You know, I hope you accept

14   that.  There's nothing more to that.

12:59:51PM 15         You know, because we can't disprove.  I can't call

16   the U.S. Postal Service Inspector General's Office to do a

17   federal investigation into how and why his letter took three

18   weeks to get to the facility.

19         I just don't have that authority.

01:00:23PM 20         You know, just before I wrap up here, I just -- the

21   other thing is what would be the motivation for a career

22   public servant to do a heinous act of holding something back?

23   We didn't hide a thing here.

24         You know, there's -- there was testimony here, he

01:00:53PM 25   filed a grievance.  Guess what?  He brought something to the

1   attention of the facility and guess what?  What did the

2   facility do?  They looked at it and said, you know what?  You

3   got a point, I want every inmate at Elmira Correctional

4   Facility to have the benefit of a daily review on these out to

01:01:12PM 5   court mails.

6       So he actually won something, it was a good thing.

7   We didn't hide under the carpet or something here or under the

8   rug, no.

9       Just finally, I want to make sure you understand

01:01:30PM 10  this.  This lawsuit is against Ms. Gates individually, it's

11  not against New York State.  It's not against New York State.

12  It's a 1983 case that's against her individually.  So if

13  there's a judgment or there's a decision or something that's

14  adverse, it goes to her reputation, to her person.

01:02:05PM 15      You know, Mr. Livingston has had more than one bite

16  at the apple.  Multiple times.  Multiple times at the apple of

17  overturning his appeal.  He's had various judges looking over

18  this.  And he would like you to believe that all these judges

19  that sit on these appellate divisions and the lower courts,

01:02:29PM 20  that each one of these judges rubber stamped another lower

21  court decision without reviewing the record.

22      No.  He's not qualified to say that.

23      Now, at the end of the day there is no motivation

24  here.  No motivation for her, number one.

01:02:58PM 25      Plaintiff's case is just simply incredible for him

1 to be able to point the finger at Ms. Gates.  He can't point

2 the finger at Ms. Gates.  He himself testified he doesn't

3 know.  He can only speculate.

4         We can all speculate.  Speculation is not enough.

01:03:20PM 5 It's just not.

6         There was a lot of testimony he's a convicted

7 felon, we understand that, fine.  And, again, that may or may

8 not go into the issue of credibility.  That's up to you.  I'm

9 not -- I never hammered away on that.  I'm leaving that up to

01:03:44PM 10 you.  Give him a fair shot, give everyone a fair shot here.

11 But you know what?  You can think about those things if you

12 like.  Those issues, you weighing the credibility of the

13 witnesses, all of the witnesses, you can.  The judge will

14 instruct you on all of that.

01:04:04PM 15         But in conclusion, in conclusion here, my client

16 Ms. Gates, regarding the defendant, wants you to know that

17 this is a very serious matter for her.  She's the one on the

18 hot seat.  All right?  For over six years, okay?

19         For us, we might think this is not a big deal, but

01:04:32PM 20 I want you to -- we want you to know that this is a very

21 serious matter.

22         That ultimately you're going to maybe have to weigh

23 these, the differences between these diametrically opposed

24 versions of events and reject the other one's claims.  You

01:04:55PM 25 might have to reject one party's over the other.  He's

1  claiming something; we're saying this is our defense, this is
2  what we did.

3          And it may depend on credibility.  So I ask you to
4  weigh all the things that you bring into this courtroom on
01:05:10PM 5  your own, the things that you learn outside and what you learn
6  from the court in weighing the credibility of the witnesses.

7          You know, I suspect that Mr. Livingston will be
8  seeking money damages.  But the most troubling thing about
9  that is the fact that this case is even before you and
01:05:36PM 10  obviously he has a captive audience.  He has a captive
11  audience, the jury, eight wonderful gentlemen and ladies of
12  the jury, myself, officers of the court, resources.  He has a
13  captive audience.  You know, that's really amazing.

14          And not only just that, but it's a personal affront
01:06:02PM 15  to Ms. Gates.

16          **THE COURT:** Ladies and gentlemen, I'm going to ask
17  you to disregard that.

18          Mr. Benitez, keep --

19          **MR. BENITEZ:**  Thank you, pardon me, Judge.

01:06:18PM 20          Here, my client, Ms. Gates, has nothing to gain
21  other than vindication.  Based on all of the credible evidence
22  in this case, I respectfully request of each one of you to
23  come back with the unanimous verdict on her behalf, dismissing
24  this claim against her.  And then you provide her -- provide
01:06:40PM 25  the plaintiff with zero amount of damages.  I thank you very

1    much for your time and your energy throughout this period of

2    time.  Thank you very much.

3              **THE COURT:** Thank you.  Mr. Livingston?

4              **MR. BENITEZ:**  Thank you, Judge.

01:07:03PM 5         **THE COURT:**  You may proceed.

6              **MR. LIVINGSTON:**  Good afternoon.  After that I

7    don't know where to start, but I'll start by saying America is

8    a great country to have me to be able to stand up in front of

9    you and saying these defendants violated my right and

01:07:33PM 10   hopefully you all can fix it or help me fix it, and other

11   places you can't do that.

12             So I thank you, the forefather and whoever helped

13   to develop the system, for that.

14             First of all, I want to answer some things that he

01:08:02PM 15   said.  He say, basically, he saying how a innocent person, how

16   would a innocent person attack they conviction.  They say, you

17   know, I'm innocent, I'm innocent.

18             But how would a innocent person get convicted in

19   the first place?  It had to be something went wrong in the

01:08:25PM 20   procedure and that's all I attacked during my litigations.

21   Something happened in the procedures.  They did something

22   wrong when they wasn't supposed which violated my

23   constitutional right to a fair trial.  Every chance I got, I

24   pointed out to them what it was.  And every chance is always

01:08:50PM 25   something extraordinary that took place why I'm still here and

1  in front of you.  Every chance, every turn I made something

2  extraordinary happened.

3          He's saying -- another thing he said, he said

4  denial is a dismissal.  He playing semantics?  It mean the

01:09:14PM 5  same thing.  They got dismissed or it got denied.  Same thing.

6          And who is to say that somebody didn't read that

7  letter while they have it in they possession.  For 22 days

8  they had in possession.  Who to say they didn't read it?

9          And there's evidence or circumstantial evidence

01:09:36PM 10  which you can infer that somebody read it because the letter

11  arrived, it was dated, excuse me, July 26th, 2006.  And in

12  that letter -- let me grab it for you -- it was marked

13  Exhibit No. 5, it's in evidence if you want to read it.

14          In that letter it states in pertinent part

01:10:08PM 15  additional submissions, if any, must be mailed within three

16  weeks after the date of this letter.  So it gave specific

17  time.

18          Some of you all like math.  There's no hard algebra

19  or calculus or trigonometry to figure out three weeks from

01:10:33PM 20  July 26th is around August 16th, 17th.  And boom!  You got the

21  date that I was given the letter.  All they had to do was

22  check.  You see that they received that letter, they say we

23  gonna hold it for three weeks and they gave it to me three

24  weeks.

01:10:59PM 25          I don't know why.  But the result was me being

1    denied access to the court.  Another thing he said, he said my

2    grievance fixed the problem.  Yes, it did.  Maybe it would

3    went to another person.  That would be good, especially if

4    it's a good person.

01:11:26PM 5          But that fixing ain't doing me no good.  Only you

6    can do me some good by ruling in my favor.

7              Another thing he said, he say this thing is not

8    against the State.  He's a State employee.  He work for the

9    State.  He represent the State.  So this is a State issue.

01:11:56PM 10         That's if you people choose to give me money,

11   that's who is going to pay.

12             **MR. BENITEZ:**  Objection, Your Honor.  That's a

13   misstatement of facts.  The law is clear this is against an

14   individual, Judge.

01:12:09PM 15         **THE COURT:** Ladies and gentlemen, please disregard

16   the last remark by the plaintiff.

17             **MR. LIVINGSTON:**  I wasn't prepared to make this

18   summation right now because I didn't expect it to be over this

19   soon and you ready to make the summations in court.  But so I

01:12:35PM 20  put something together, you know, in case.

21             Like I said before, a lot of extraordinary things

22   that happened to me or innocent person to get convicted of a

23   crime.  A lot.  In my case, a lot did occur.

24             If I remember correctly, this crime you gonna read

01:13:05PM 25  the specifics in some of the exhibit that I put in evidence.

1 | I don't mind.  I have nothing to hide about that.

2 | But on December 11th, 1982, they said I committed

3 | this crime.  And for three and a half years nobody came and

4 | checked me, said did you commit this crime?  You under arrest.

01:13:36PM 5 | I was living where I live.  They knew where I live.

6 | So in 1986 they had this crackhead person, I don't

7 | know if you know what a crackhead is, but they had this

8 | crackhead person come to court and say, "yeah, he did it."

9 | For whatever reason she probably had a reason.  Probably

01:14:03PM 10 | trying to save herself or whatever.  Right?

11 | So they finally arrested me after three and a half

12 | years of a criminal.  And then I don't know if -- if the jury

13 | believe her, what she said, but during the trial they

14 | literally laughed at her, laughed at what she was saying.

01:14:31PM 15 | That's the -- that's one of the first extraordinary

16 | thing that happened in the case.

17 | Then the second extraordinary thing this person

18 | named Duane Cook, he was a co-defendant, I don't know where he

19 | came from.  After the judge threatened him that he was going

01:14:53PM 20 | to jail for how many times --

21 | **THE COURT:** Mr. Livingston, I'm going to interrupt

22 | you now.  None of this is in evidence.

23 | **MR. LIVINGSTON:**  It is.

24 | **THE COURT:** No, it's not.

01:15:01PM 25 | **MR. LIVINGSTON:**  It's in the record, it's in the

1  writ right there.

2         **THE COURT:** Is there a transcript of the trial?

3         **MR. LIVINGSTON:**  Yes, not a complete transcript,

4  but it's a transcript in the writ.

01:15:11PM 5         **THE COURT:** I'll allow a little bit of this.  You're

6  not --

7         **MR. LIVINGSTON:**  I wasn't going to put the whole

8  thing in there.  But the other extraordinary thing that

9  happened in this case they -- the judge persuaded him, scared

01:15:24PM 10  him up to testify against me.  He said he would.  Then he

11  reneged on that, he didn't do it.  He would have been lying

12  anyway.

13         So I thought I was good then.  He's not gonna lie

14  on me, she can't really lie because they already laughed her

01:15:43PM 15  off the stand.  And -- but the third extraordinary thing

16  happened when after he said he wasn't testifying when he was

17  testifying against me, the judge, the district attorney, and

18  my lawyer told the jury that he was gonna testify against me,

19  and the things that he will say.  The things that they are

01:16:09PM 20  allege he would say would corroborate the crackhead person's

21  testimony.

22         But since he didn't testify, my Sixth Amendment

23  right to confront a witness was violated.  I couldn't put

24  through what they already told the jury that he was going to

01:16:34PM 25  testify to.

1          So they had the corroboration with this person,

2   this person that didn't testify.

3          That's how I was convicted.

4          All right, when I was convicted I was shocked.  I'm

01:17:01PM 5   like how the -- this happened, totally shocked.  I ain't know

6   what to do next.  When I stopped feeling sorry for myself, I

7   figured out, you know, that's people have constitutional right

8   to appeal.  So that was my next move.

9          And I don't -- I would say that a innocent person

01:17:28PM 10  couldn't spend this much time in prison.

11         So like I was telling you before, a lady named

12  Ms. Finn, she took the case and she put those points of law in

13  the brief, inefficient evidence to convict and the three and a

14  half years indictment delay.

01:17:59PM 15        Now, the fourth extraordinary thing that occurred

16  to me being convicted was when Ms. Finn, she briefed those two

17  points, the fourth extraordinary thing she for some reason she

18  got -- she kicked off the case or just replaced or something

19  by another person, a Kevin Casey.

01:18:32PM 20        Then the fifth extraordinary thing was when Kevin

21  Casey came on my case, he disregarded the ineffective --

22  insufficient evidence to convict allegation briefing points of

23  law, just totally disregard that in a brief, changed the

24  pre-indictment delay to something more insignificant, speedy

01:19:02PM 25  trial.  Changed that to speedy trial, right?

1          The Appellate Division, they affirmed it.  I don't

2    know what it was because he was ineffective or because he

3    didn't argue what she put in there, but they affirmed it.

4          And after they affirmed it, I did -- he did a

01:19:40PM 5    application to leave, similar to what I did in the writ of

6    error coram nobis.

7          Then this what hurts me to what I don't know what

8    he did in the lower court because when he did the application

9    for leave, that's when I find out that he had left out those

01:20:02PM 10   two points and changed the other one, he left out the

11   significant -- insignificant evidence to convict and he left

12   out the -- that he changed the indictment delay to speedy

13   trial.

14         So when he did that, that was the fifth

01:20:25PM 15   extraordinary thing why I still in prison.

16         And it been uphill battle from then on.  In 2006

17   before that I did numerous brief application appeals, try show

18   the court, including I did a error coram nobis regarding

19   Mr. Casey's ineffectiveness of leaving out those two issues.

01:21:15PM 20        So one day we was in Elmira and I'm in the law

21   library, I stay in the law library.  So me and this person, we

22   use to -- a bunch of us really, we used to argue back and

23   forth and this issue came in and I told this person, Adam

24   Jameson, I had that issue and so he asked to see the minutes

01:21:38PM 25   and I showed him the minutes and he told me yeah, you got that

1  issue and it was strong issue.

2      So me and him put together that writ of error coram

3  nobis. I filed it in the court. I am to number 6, sixth

4  extraordinary issue that occurred is this issue right here

01:22:22PM 5  that we here today dealing with. I didn't get that letter

6  from the Court telling me -- said extra paper, the additional

7  papers.

8      The clerk sent the letter dated July 26th, '06

9  state that they wanted the papers and that the Judge Judith

01:22:59PM 10  Kaye was the assigned judge.

11      In one of the papers I'm alleging that the

12  withholding of that letter, July 26th letter, infringed on my

13  constitutional right to access the court where I could not

14  file with the Court of Appeals the papers that initiated the

01:23:30PM 15  writ of error coram nobis within the Appellate Division.

16      This is what the July 26th letter was saying.

17      And according to the rule of practice, if these

18  papers are not filed, petition will be dismissed. That's

19  exactly what happened. I didn't file it.

01:23:59PM 20      I agree that the Assistant Attorney General said,

21  he said this was a simple case. But he made it more difficult

22  because the defendant came about and told oh, we didn't

23  hold --

24      **MR. BENITEZ:** Objection, Your Honor, object. I'm

01:24:26PM 25  not a party to the case in this case.

1          **THE COURT:**  Sustained.

2          **MR. LIVINGSTON:**  The defendants got on the stand

3    and said, "well, I didn't withhold the letters."  The evidence

4    showed it was withheld for 23 days -- 22 days, excuse me.

01:24:49PM 5          And then the letter arrived on August 17th, 2006,

6    after 22 days.  I know the Postal Service is not like that.

7    Because the letter -- a letter from New York City from that

8    court, from Judith Kaye chambers arrived in Elmira from

9    New York City, it was mailed the post -- she -- the Bowes

01:25:19PM 10   stamp says August 24th, and then the Post Office postmark said

11   August 25th.  It got to Elmira on the 28th.

12         Now, how come that letter from New York City took

13   only what?  Three days.  And then this letter, the most

14   important letter, took 22 days.

01:25:49PM 15         I'm like, man, something happened.

16         And then coincidentally, it matches up with the

17   prescribed deadline inside that letter.  Three weeks.  Matches

18   up.  Three weeks.

19         On August 17th, 2006, the letter was stamped and on

01:26:19PM 20  August 17th, after Judge Judith Kaye didn't get my submission,

21   additional submission, she dismissed it on August 17th.

22         So somebody count real good.

23         I think the State established a real good --

24         **MR. BENITEZ:**  Objection, Your Honor, the State is

01:26:58PM 25  not a party to the case.

1          **THE COURT:** Overruled.  You may proceed.

2          **MR. LIVINGSTON:**  They can't establish the

3   coincidentalness, that's the word.  They can't explain how

4   these dates coincide like that, how it adds up to not just

01:27:27PM 5   Ms. Judith Kaye date, but also to the date that the deadline

6   was prescribed, the deadline that was the deadline.

7          Can't explain that away.

8          I know the explanation is circumstantial and you

9   must use the evidence that I put into evidence to infer what

01:28:01PM 10   that evidence establish.

11          It's simple, I think.

12          The evidence showed that the July 26th, 2006,

13   letter was held and delayed until August 17th.  The evidence

14   showed that on August 17th, Court of Appeal deny my

01:28:28PM 15   application to leave -- to appear.  And it also showed that

16   that was the deadline, three weeks that the letter inside the

17   envelope stated that was the deadline.

18          Now, these issues, it's not just important to me,

19   it's very important to me.  But it's also important to you

01:29:14PM 20   because you are part of the public.  And this could happen to

21   anybody.  So it's a public interest for you to rule in my

22   favor because it will help the public.

23          For if they get away with this violation, they

24   probably never be stopped.  And nobody else will probably try

01:29:43PM 25   to stop them.

1        And the way to make them stop is to find them

2   liable, grant me big damage award; or if not, the next time

3   these claims happen again there's no telling who they will do

4   it to.  This is why this case is important to the public, not

01:30:07PM 5   just me.

6        I know jurors a lot of time don't like giving

7   prisoners money, I've seen it happen.  I don't know why -- why

8   they say, why they do that, but it happens.  But I'm not

9   going to stand here and say that, you know, it's a uphill

01:30:45PM 10  battle for me right now to convey the message that I want

11  conveyed and just probably because I'm a prisoner, you know,

12  they look -- people look at prisoners the way they have they,

13  you know, prejudice or bias or whatever.

14        So it's a uphill battle.  I hope you gonna hold

01:31:16PM 15  that, put that aside and rule in my favor.  This is not one of

16  those average prison litigation lawsuit.  I'm not accusing

17  assault or excessive force or anything.  This is -- this is --

18  this is bigger than that, I think.

19        Because it effect not just me, like I said, this is

01:31:53PM 20  a public interest case.  Public will be very interested in

21  this.

22        As you know, I'm representing myself and I hope

23  that's another thing I hope you don't hold that against me.  I

24  might have made a lot of mistakes and things like that, but,

01:32:39PM 25  you know, I'm not trained in things like that, but I have the

1  facts on my side and they can't be disputed.

2          They try, but they can't, they can't explain away
3  the facts.

4          The letter from the court was delayed for 22 days,
01:33:20PM 5  and that delay caused me a opportunity to file the papers in
6  court.

7          As I said, I'm not a lawyer, I'm not trained, I
8  could have did a lot of things, I probably could have brought
9  witnesses to -- on the stand and tell you how things is
01:33:51PM 10  done -- are done.  But that didn't happen, so let's focus on
11  what happened.

12          I would like to bring your attention to the
13  exhibits.

14          **THE COURT:** Are you almost done?
01:34:37PM 15          **MR. LIVINGSTON:**  No.

16          **THE COURT:** Well, you are.  Five more minutes.

17          **MR. LIVINGSTON:**  Five, all right.

18          I like to bring your attention to the exhibits and
19  I would like to have you look at them during your
01:34:54PM 20  deliberations because they explain a lot.

21          And you by using these exhibits, it will show that
22  my side of the story is the facts.  I didn't make it up, try
23  to get paid, these is facts.

24          I want to get out of prison, I think it will take
01:35:29PM 25  some money and I hope you can help me out with that.  Thanks.

1          THE COURT: Thank you.  Ladies and gentlemen, at

2 this time we're going to recess until 8:30 tomorrow morning.

3 And in the meantime, I'd ask you not to discuss the matter or

4 allow anybody to discuss the matter with you.

01:35:49PM 5          Even though you've heard the evidence and the

6 summation of counsel, it's not the time to make up your mind

7 and please do not discuss it with anybody.  The reason why

8 that's so important is you have to base your decision only on

9 the evidence you heard in this courtroom.

01:36:02PM 10          With that understanding, the jury may step down

11 until 8:30 tomorrow morning.  Thank you.

12          (**WHEREUPON**, the jury was excused).

13          THE COURT: When we resume tomorrow, I'll also

14 confirm the exhibits to make we're sure all on the same page

01:36:40PM 15 regarding any exhibits that have been received, okay?

16          MR. BENITEZ:  Okay.

17          THE COURT: With that understanding, we'll stand in

18 recess.

19          MR. LIVINGSTON:  Can I ask you something?

01:36:48PM 20          THE COURT: Yes.

21          MR. LIVINGSTON:  Was it a time restraint on my

22 summation?

23          THE COURT: Well, you were repeating yourself and

24 going over and over again the same thing.  Sounded like you

01:36:58PM 25 were going through each of the exhibits, which would have been

1  repetitive.  In addition, Mr. Benitez was about 22 or 23

2  minutes, you're already at 35 minutes.  So quite a bit longer

3  than the other summation.  Okay?

4          **MR. LIVINGSTON:**  You saved me from myself.

01:37:14PM 5          **THE COURT:** I did?  Why?  I thought you were doing

6  pretty good.  You were speaking well.  Okay, we'll stand in

7  recess until 8:30, thank you.

8          **MR. BENITEZ:**  Thank you.

9          (**WHEREUPON**, the proceedings adjourned at 1:39 p.m.)

10                    *    *    *

11              <u>**CERTIFICATE OF REPORTER**</u>

12

13          In accordance with 28, U.S.C., 753(b), I certify that

14  these original notes are a true and correct record of

15  proceedings in the United States District Court for the

16  Western District of New York before the Honorable Frank P.

17  Geraci, Jr. on October 23rd, 2013.

18

19  <u>S/ Christi A. Macri</u>

20  Christi A. Macri, FAPR-RMR-CRR-CRI
   Official Court Reporter

21

22

23

24

25